JOANOS, Judge.
This appeal is from a final order of the Division of Administrative Hearings determining that certain proposed rules of the Department of Labor and Employment Security, Division of Workers’ Compensation (Division), are an invalid exercise of delegated legislative authority. The issues are: (1) whether the hearing officer’s findings of fact are supported by competent substantial evidence and the final order correctly interprets the proposed rules, (2) whether proposed rules of the Division of Workers’ Compensation must be formulated or reviewed by a peer group, and (3) whether the hearing officer improperly shifted the burden of production and persuasion from petitioners/ap-pellees to the Division of Workers’ Compensation. We reverse.
The Division published the proposed rules at issue in the May 8, 1992, edition of the Florida Administrative Weekly. The proposed rules held to be invalid are 38F-7.802(1) and (5); 38F-7.803(2); and 38F-7.806(2)(f).[1] On May 29, 1992, appellees *805 Bradley, Balester, and Englert, workers’ compensation claimants receiving treatment from chiropractors; Donald H. Woeltjen, D.C.; and the Florida Chiropractic Association, Inc., filed a petition to challenge the proposed rules, pursuant to section 120.54(4), Florida Statutes (1991). The petition alleged (1) the specific authority cited in the proposed rule does not authorize creating the term “physical reconditioning” or any of the other newly created terms proposed in the challenged rules; (2) the cited statutes do not authorize limiting performance of physical therapy to “physical reconditioning providers,” meaning physical therapists or occupational therapists, to the exclusion of physicians licensed and authorized by statute to provide those services; (3) Chapter 440 does not authorize “a CARF-aecredited interdisciplinary team’s evaluation,” or limitation to one “accrediting” organization to the exclusion of other similar organizations that are equal to or exceed the “accrediting standards” of CARF[2]; (4) the proposed new rules amend or modify section 440.13, and. exceed the authority for rulemaking delegated to the Division, “constituting an invalid exercise of delegated ... legislative authority under Subsection 120.54(4), Florida Statutes (1991).... ” On June 9, 1992, the Florida Physical Therapy Association, Inc., filed a petition to intervene. The intervenor’s petition alleged, in part:
A significant goal of the Division is to help contain the cost of providing health care to injured workers. The proposed rules provide a rational basis for containing those costs, are a valid exercise of the legislative authority delegated to the Division, are not arbitrary or capricious, and are supported by law and fact.
At the final hearing, witnesses appearing on behalf of the Division testified the proposed rules were promulgated to address a perceived need that was not being met under the existing rules, ie., that of the individual with needs between remedial acute and sub-acute care and the extensive and expensive interdisciplinary care provided for individuals with work-related disabling conditions that have become chronic. By these rules, the Division hopes to remedy the situation of the injured worker who becomes deconditioned during convalescence, thereby averting re-injury upon return to work. Aso, the Division expects the physical reconditioning services to reduce the number of persons who become chronically disabled as a result of an industrial injury. Under the proposed physical reconditioning rule, if a primary physician refers an injured worker for physical reconditioning, only a physical therapist or occupational therapist will be authorized to provide physical reconditioning services, and only the physical reconditioning provider will receive payment for such services. In other words, an authorized primary physician will not receive payment for physical medicine modalities he or she provides at the same time such services are being provided by a referral physical reconditioning provider.
The Division contemplates that the proposed rules will contain costs by virtue of reducing the risk of re-injury and chronic disabling conditions, and by virtue of precluding double billing for services included within the ambit of physical reconditioning. The Division’s representative explained that under the rule, a primary physician would be reimbursed for physical medicine modalities provided within the first thirty days post-injury, ie., during the acute and sub-acute stages of recovery. If, at the end of the acute and sub-acute stages of recovery, the primary physician determines the injured worker would benefit from physical reconditioning, the primary care physician would recommend or refer the injured worker for *806 physical reconditioning. Only physical and occupational therapists would be authorized to provide those services. The proposed rules contemplate provision of physical reconditioning services, when indicated, no earlier than thirty days after the injury, with cessation of services 180 days post-injury, absent the existence of specific documented criteria. The 180-day cut-off period was based on medical and industrial studies which show that, in general, injury-related problems remaining six months post-injury have become chronic, and thus are not amenable to physical reconditioning.
Division personnel and consultants began conferring on the proposed rules in 1988 or 1989. The term “physical reconditioning” was based on the program’s intent to meet the needs of the injured worker who was out of condition due to the inactivity attendant upon convalescence. The Division’s decision to limit physical reconditioning providers to occupational and physical therapists was based on the entry level training requirements of these particular disciplines. Physical therapists and occupational therapists are held accountable for physical restoration and functional restoration as the sole focus of their practice. The proposed rules contemplate an active process whereby the injured worker takes responsibility for changing his or her own clinical situation with respect to functional or physical capabilities.
Since CARF is the accrediting association currently used by the state agency, the Division specified CARF as the accrediting association for the proposed rules. CARF is one of two national accrediting agencies accepted throughout the medical field. The rule drafters concluded that CARF standards were cost effective, because CARF is a non-profit, consumer advocacy organization. The Division did not give consideration to the chiropractic rehabilitative association as an accrediting association for the proposed rules, because the association had not been formed when the proposed rules were promulgated.
The Division relied upon sections 440.-13(l)(d) and 440.591, Florida Statutes (1991) as authority for promulgation of the proposed rules. In ruling that proposed Rules 38F-7.802(1) and (5), 38F-7.803(2), and 38F-7.806(2)(f) are invalid, the hearing officer found the Division’s adoption of the proposed rules was not in the manner prescribed by section 440.13(1), Florida Statutes. We disagree.
Resolution of the first issue requires consideration of the agency’s rulemaking authority; and the principles governing the exercise of that authority. Legislative intent with respect to the workers’ compensation law at issue here is set forth in section 440.015, Florida Statutes[3], which states in relevant part:
It is the intent of the Legislature that the Workers’ Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker at a reasonable cost to the employer. ...
See also Ch. 91-1, Preamble, Laws of Fla. The challenged rules were designed to implement delivery of the “medically necessary” services defined in section 440.13(l)(d), and the procedure outlined in section 440.13(2)(d). The agency’s rulemaking authority is derived generally from section 440.591, Florida Statutes, which provides:
The division shall have the authority to adopt rules to govern the performance of any programs, duties, or responsibilities with which it is charged under this chapter.
More specific rulemaking authority is provided in section 440.13(l)(d), which states:
(d) “Medically necessary” means any service or supply used to identify or treat an illness or injury which is appropriate to the patient’s diagnosis, consistent with the location of service and with the level of care provided. The service should be widely accepted by the practicing peer group, should be based on scientific criteria, and should be determined to be reasonably safe. The service may not be of an experimental, investigative, or research nature, except in those instances in which prior approval of the division has been obtained. The division shall promulgate rules provid *807 ing for such approval on a ease-by-case basis when the procedure is shown to have significant benefits to the recovery and well-being of the patient.
It is an established principle that “[w]here the empowering provision of a statute states simply that an agency ‘may make such rules and regulations as may be necessary to carry out the provisions of this act,’ the validity of the regulations promulgated thereunder will be sustained as long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious.” Adam Smith Enterprises v. Department of Environmental Regulation, 553 So.2d 1260, 1271 (Fla.1st DCA 1989). See also General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063, 1067 (Fla.1984); General Motors Corp. v. Department of Highway Safety & Motor Vehicles, 625 So.2d 76, 78 (Fla.1st DCA 1993).
In a rule challenge, “the burden is upon one who attacks a proposed rule to show that the agency, if it adopts the rule, would exceed its authority; that the requirements of the rule are not appropriate to the end specified in the legislative act; that the requirements contained in the rule are not reasonably related to the purpose of the enabling legislation or that the proposed rule or the requirements thereof are arbitrary or capricious.” Agrico Chemical Co. v. Department of Environmental Regulation, 365 So.2d 759, 763 (Fla.1st DCA 1978), cert. denied, 376 So.2d 74 (Fla.1979). Another settled principle in the area of administrative rulemaking is that—
agencies are to be accorded wide discretion in the exercise of their rulemaking authority, clearly conferred or fairly implied and consistent with the agencies’ general statutory duties. ... An agency’s construction of the statute it administers is entitled to great weight and is not to be overturned unless clearly erroneous ... the agency’s interpretation of a statute need not be the sole possible interpretation or even the most desirable one; it need only be within the range of possible interpretations.
Department of Professional Regulation, Board of Medical Examiners v. Durrani, 455 So.2d 515, 517 (Fla.1st DCA 1984). See also GMC v. Dept. of Hwy. Safety, 625 So.2d at 77; Florida League of Cities v. Department of Insurance, 540 So.2d 850, 857 (Fla. 1st DCA 1989).
In this case, the Division’s representatives testified that the proposed rules were designed to provide needed services to injured workers who fall between the acute/sub-acute and chronic stages of injury, which needs are not being addressed under the current system. Concomitantly, the proposed rules were designed to be cost effective in the sense that the physical reconditioning services contemplated by the rules will lessen the risk of re-injury to the deconditioned worker, and will help to avert the chronic stage of injury which requires expensive interdisciplinary care and treatment. In this regard, the record reflects that if a worker’s injury-related problems remain unresolved six months after the injury, the disability becomes chronic in most cases.
Competent substantial evidence presented to the hearing officer indicates that the type of services contemplated by proposed Rules 38F-7.802(1) and (5) are not being provided in the early intervention, structured manner contemplated by the proposed rules, and that a need for such services exists. Similarly, undisputed evidence established that, for the most part, any injury-related physical or vocational problems which continue for six months post-injury become chronic, thereby demonstrating the efficacy and reasonableness of proposed Rule 38F-7.803(2), providing that physical reconditioning shall not begin before thirty days have elapsed following the injury, or begin or continue after. 180 days following the date of injury. In addition, evidence was presented that the proposed rules’ designation of CARF as an accrediting agency was consistent with current state practice, and is in accordance with the Division’s duty to control costs. The thrust of the physical reconditioning rule is to avert chronic injury-related conditions. In this regard, the 180-day termination point for physical reconditioning is reasonably related to the provision of medically necessary services, and is neither arbitrary nor capricious.
*808 The evidence demonstrates that acute and sub-acute medical care is intense treatment usually provided in the first thirty days following an injury. Since a physical reconditioning program cannot begin until thirty days after the injury and then only upon referral by a primary care physician, there will be few instances when proposed Rule 38F-7.806(l)(e) would preclude payment to the primary care physician for physical medicine services. To the extent that the rule proscribes payment to two health care providers for the same service, it is reasonably related to the cost containment intent of section 440.015, and is neither arbitrary nor capricious. By the same token, competent substantial evidence established that residual problems remaining 180 days after the injury usually become chronic, and, as such, are treated through an interdisciplinary approach not subject to this rule. Therefore, the limitation period in proposed Rule 38F-7.806(2)(f) is reasonably related to the provision of medically necessary services at reasonable cost to employers, and cannot be deemed arbitrary or capricious.
The Division is authorized “to adopt rules to govern the performance of any programs, duties, or responsibilities with which it is charged under this chapter.” § 440.591, Fla.Stat. (1991). Among other things, Chapter 440 charges the Division with the duty to deliver “medically necessary” services to injured employees. The evidence submitted by the Division demonstrates the medical necessity for the services contemplated by the proposed rules, and the designation of physical and occupational therapists as physical reconditioning providers is reasonable, in light of the training and standards of these particular disciplines. The rules contemplate delivery of an intermediate level of care, specifically designed to restore strength and flexibility, so as to avert the development of chronic disabling conditions or re-injury upon return to work.
Our examination of the record discloses that certain findings of the hearing officer are either without support in the record, or reflect a misperception of the evidence submitted. For example, the hearing officer found that the physical treatment modalities administered by the primary care physician during the acute stage of injury are defined in the proposed rules as “physical reconditioning,” and that only physical therapists "will be paid for these services. A fair reading of Rule 38F-7.806(l)(e) indicates it is only when the listed modalities and procedures are provided by a primary care physician concurrently with a physical reconditioning program that the services “shall be authorized to be provided solely by the physical reconditioning provider and shall be included in the reimbursement for the physical reconditioning program.” The record reflects that the primary authorized physician will bill for acute or sub-acute care under the Florida Workers’ Compensation Provider Manual. Moreover, the physical reconditioning services contemplated by the proposed rules would not be administered during the acute stage, although there could be some overlap of sub-acute care and physical reconditioning services. Once the primary care physician refers an injured worker to a physical reconditioning program, he or she cannot bill separately for physical treatment modalities being provided concurrently by a physical reconditioning provider. In other words, the rule does not permit a primary care physician to receive payment for physical reconditioning services provided concurrently by a referral physical reconditioning provider. However, the proposed rule does not preclude payment to the primary care physician pursuant to the Florida Workers’ Compensation Provider Manual.
There is nothing in the record to support the hearing officer’s finding that the challenged rules limit reimbursement for remedial physical treatment modalities to those rendered by physical and occupational therapists in the acute, sub-acute, and chronic phases of injury. It appears this finding was based on the hearing officer’s failure to consider the rule provisions regarding concurrent payment. The testimony at the hearing indicated that the proposed rules were designed to meet the needs of injured workers in the stage between acute/sub-acute and chronic, without excessive cost to employers and carriers. The Division proposes to do this by establishing programs that actively *809 involve injured workers in their own rehabilitation prior to the six-month period deemed to be the point at which unresolved problems become chronic, due either to residual physical disability, attendant psychological overlay, or both. Cost containment is achieved by limiting reimbursement for physical reconditioning services to the referral physical conditioning provider. The primary care physician will continue to be reimbursed pursuant to the Manual.
The hearing officer also found that physicians are obliged to provide physical medicine services under their respective medical practice acts, but will be denied reimbursement for those services under the rule. The record indicates that primary care physicians rarely, if at all, provide structured exercise programs in the nature of the physical reconditioning contemplated by the proposed rules. Some health care professionals testified that if the need for physical reconditioning were indicated by a patient’s condition, they would feel a duty to provide a structured program of exercise. Under the Division’s construction of the proposed rules, if a chiropractor or other physician provided physical reconditioning services in his or her role as primary care physician, the services would be reimbursed under the Manual, so long as the same services were not being provided in a concurrent physical reconditioning program. If the primary care physician certifies that the injured worker should receive physical reconditioning, the rule provides that payment for referral physical reconditioning services will be made only to a physical therapist or occupational therapist, because these disciplines focus upon, and are held accountable for, physical results directly attributable to their efforts.
There is an absence of competent substantial evidence to support the hearing officer’s conclusions that the proposed rules limit accepted medical practice by several specialties in the guise of creating a new area of service. The hearing officer’s conclusion in this regard may have been derived from the assumptions expressed by several of appellees’ witnesses. Such assumptions do not constitute reliable evidence of the nature required to invalidate proposed rules promulgated in accordance with an agency’s rulemaking authority.
As the Division maintains, the final order contains numerous factual findings which are without support in the record. In addition, the order misconstrues the effect of the proposed rules. We conclude the Division’s interpretation of its proposed rules is a permissible construction that comports with, and effectuates, clearly-stated legislative intent. See § 440.015, Fla.Stat. (1991).
The second issue concerns the hearing officer’s seeming determination that the Division’s proposed rules must be formulated or reviewed by a peer review committee. The hearing officer’s construction of sections 440.13(l)(c), (e), and (f), so as to require the Division to develop proposed rules through the vehicle of a “peer review committee” imposes an erroneous gloss upon the Division’s rulemaking authority. Indeed, appel-lees concede error on this point, but urge the hearing officer’s references to review of the Division’s rules by a “peer review committee” should be treated as surplusage. We find no merit in this contention. Rather, the hearing officer’s misperception of the Division’s rule-making authority is central to his finding that the proposed physical reconditioning rules are an invalid exercise of delegated legislative authority.
The third issue concerns the hearing officer’s cost control findings.[4] As the Division maintains, these findings indicate the hearing officer improperly shifted the burden to show cost containment to the Division. Instead, as the party attacking the proposed *810 rules, the burden was on appellees to demonstrate that the rules would not reduce the long-term costs of care of injured workers. See Agrico Chemical Co. v. DER, 365 So.2d at 763.
We conclude the Division’s authority to adopt proposed Rules 38F-7.802(1) and (5), 38F-7.803(2), and 38F-7.806(2)(f) is reasonably implied by the express terms of sections 440.13(l)(d) and 440.591. Further, we conclude the proposed rules are reasonably related to the enabling legislation, and are not arbitrary or capricious.
Accordingly, the final order is reversed.
KAHN and WEBSTER, JJ., concur.

. The following material is taken from the final order under review. The order sets forth the text of the proposed rules under attack, with the specific portion contested by appellees indicated by underscoring:
Proposed Rule 38F-7.802(1) provides:
"Physical reconditioning” means an intensive, goal oriented, systematic process specifically designed to restore an individual’s systemic neuromusculoskeletal structure and function (strength, endurance, flexibility and motor control).
Proposed Rule 38F-7.802(5) provides:
“Physical reconditioning provider” means an occupational therapist, licensed pursuant to Chapter 468, FS., or a physical therapist, licensed pursuant to Chapter 486, FS.
Proposed Rule 38F-7.803(2) provides:
Physical reconditioning shall not begin before 30 days have elapsed following the injury nor shall it begin or continue after 180 days following the date of injury, except on the specific recommendation of a CARF-accredited interdisciplinary team's evaluation which includes musculoskeletal, behavioral, and vocational issues as well as a functional capacity evaluation (FCE) as provided in Rules 38F-8.021(7), F.A.C.
Proposed Rule 38F-7.806(l)(e), provides:
Acute and sub-acute remedial physical medicine services for the purpose of pain control, muscular relaxation, improved circulation, and remobilization to promote normal function, which provided concurrently with a physical reconditioning program, shall be authorized to be provided solely by the physical reconditioning provider and shall be included in the reimbursement for the physical reconditioning program. Examples of modalities and procedures typically rendered in acute and sub-acute levels of care included moist heat, ice, electrical stimulation, massage, low intensity stretching and range of motion exercises, and training in proper body mechanics.
Proposed Rule 38F-7.806(l)(f), provides:
Acute or sub-acute remedial physical medicine services as described in Rule 38F-7.806(l)(e), F.A.C., shall not be reimbursed to any physical *805 medicine provider subsequent to 180 days from the injured employee’s date of accident unless there is a medical necessity, documented by objective radiological findings or a neurological deficit or a surgical intervention necessitating the services.
The final order mistakenly numbers proposed Rules 38F-7.806(l)(e) and 38F-7.806(l)(f) as (2)(e) and (2)(f). The quoted text comes from proposed Rules 38F-7.806(l)(e) and 38F-7.806(l)(f). Proposed Rule 38F-7.806(2) contains only subparagraphs (a) through (c). For the sake of clarity, the numbering errors have been corrected in the quoted material.

. "CARF” is an acronym for the Commission on Accreditation of Rehabilitation Facilities. The organization publishes an annual standards manual known as The Standards Manual for Organizations Serving People With Disability.

. All references are to the 1991 edition of the Florida Statutes.

. The final order sets forth the following findings under the "Cost Control” caption:
35. It was not demonstrated that the proposed rules would decrease the costs of care of injured workers.
36. It was demonstrated that, under the proposed rules, reimbursement would be made to physical therapists for treatments within the area of practice of other health care professionals for care which these health care professionals currently render.
37.To the extent that two providers would now be charging for the services formerly rendered by one provider, the costs of the services would more tha[n] likely increase. The cost of administration would certainly increase.