717 So.2d 72 (1998)
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Appellant,
v.
CONSOLIDATED-TOMOKA LAND CO.; Indigo Development Group Inc.; Indigo Group Inc.; Indigo Group Ltd.; Patricia Lagoni as Trustee of Trust Nos. IDI-2, IDI-3 and IDI-4; Seaview Development Corp.; Leroy E. Folsom; James S. Whiteside, Jr., and Joan W. Whiteside; Susan Spear Root; Susan R. Graham and Chapman J. Root, II, Trustees of the Chapman S. Root 1982 Living Trust; Daniel P.S. Paul, Individually and as Trustee of the Daniel P.S. Paul Charitable Remainder Trust; Ava And Rufus, Inc.; Samuel P. Bell, III and Anne Moorman Reeves, as Tenants in Common, Appellees.
No. 97-2996.
District Court of Appeal of Florida, First District.
July 29, 1998.
Rehearing Denied September 11, 1998.
*74 William H. Congdon and Nancy B. Barnard, Palatka, for Appellant.
Frank E. Matthews, David L. Powell and T. Kent Wetherell, II of Hopping, Green, Sams & Smith, P.A., Tallahassee, for Appellees.
Thomas Crapps, Assistant General Counsel and J. Hardin Peterson, General Counsel, Governor's Legal Office, Tallahassee, for Amicus Curiae Governor Lawton Chiles.
D. Stephen Kahn, Senate General Counsel; Thomas R. Tedcastle, House General Counsel; F. Scott Boyd, Staff Attorney, Joint Administrative Procedures Committee, Tallahassee, for Amicus Curiae The Florida Legislature.
Robert A. Butterworth, Attorney General; John R. Rimes; Lee Ann Gustafson, Department of Legal Affairs, Tallahassee, for Amicus *75 Curiae Department of Legal Affairs, State of Florida.
Marcy I. LaHart and John J. Fumero, West Palm Beach; Karen West, Brooksville, for Amicus Curiae The South Florida Water Management District and Southwest Florida Water Management District.
Alfred O. Bragg, III and Stephanie Gehres Kruer, Tallahassee, for Amicus Curiae The Department of Community Affairs, State of Florida.
William L. Hyde and Rebecca A. O'Hara of Gunster, Yoakley, Valdes-Fauli & Stewart, Tallahassee, for Amici Curiae Florida Citrus Processors Association; Florida Fruit & Vegetable Association; United States Sugar Corporation; Sunshine State Milk Producers; Florida Forestry Association; Florida Fertilizer & Agrichemical Association; Florida Farm Bureau Federation; Florida Poultry Federation, Inc.; Florida Nurserymen & Growers Association; Florida Citrus Mutual; Florida Land Council, Inc. and A. Duda & Sons, Inc.
Jacob D. Varn, Victoria L. Weber and Donna E. Blanton of Steel, Hector & Davis, Tallahassee, for Amici Curiae Florida Home Builders Association and Florida Association of Realtors.
F. Perry Odom, General Counsel; Timothy A. Smith, Deputy General Counsel; Robert A. Gough, Assistant General Counsel, Tallahassee, for Amicus Curiae State of Florida, Department of Environmental Protection.
Terrell K. Arline, Tallahassee, for Amicus Curiae 1000 Friends of Florida, Inc.
Peter Belmont, St. Petersburg, for Amicus Curiae The Sierra Club.
David Gluckman of Gluckman and Gluckman, Crawfordville, for Amicus Curiae The Florida Wildlife Federation, Inc.
PADOVANO, Judge.
The St. Johns River Water Management District appeals a final order by an administrative law judge declaring invalid a series of its proposed rules. In broad terms, the new rules define two areas within the District as hydrologic basins and establish more restrictive permitting and development requirements within these basins. We conclude that the District acted within the authority delegated by the Legislature in proposing the rules at issue. Therefore, we reverse the order by the administrative law judge and hold that the rules are valid.
On January 17, 1997, the District published notice of its intent to revise Chapters 40C-4 and 40C-41 of the Florida Administrative Code, and related provisions of an incorporated document known as the "Applicant's Handbook: Management and Storage of Surface Waters." Among other things, the proposed revisions of these rules would add the Spruce Creek and Tomoka River Hydrologic Basins to five other hydrologic basins then existing within the District. Spruce Creek and the Tomoka River, both designated as Outstanding Waters of Florida, flow through these basins in Southeastern and Northeastern Volusia County, respectively.
The proposed changes in Chapter 40C-41 would add four new standards within the Spruce Creek and Tomoka River Hydrologic Basins. The first of these is described as a recharge standard. According to rule 40C-41.063(6)(a), three inches of runoff from directly connected impervious surfaces must be retained within a specified area of the Tomoka River and Spruce Creek Basins. Rule 40C-41.063(6)(b) creates the second new standard by establishing the criteria for floodplain storage. This rule provides that a project may not cause a net reduction in flood storage within the one hundred year floodplain of the Tomoka River and Spruce Creek. The third new standard relates to storm water management. Rule 40C-41.063(6)(c) sets construction requirements for storm water systems and specifies the kinds of systems that can be used in various circumstances. Finally, rule 40C-41.063(6)(d) establishes a riparian wildlife habitat protection zone. This new rule generally requires a developer to provide assurances that the water management system will not endanger wildlife in areas adjacent to the protected waters.
On February 21, 1997, the Consolidated-Tomoka Land Company and other parties owning property within the affected areas filed a petition for administrative determination *76 of the validity of the proposed rules. A nearly identical petition was filed on February 24, 1997, by Sam Bell and Anne Moorman Reeves, who are also property owners affected by the proposed rules. The two petitions were consolidated for a hearing, which was concluded on April 9, 1997.
The administrative law judge determined that the proposed rules are supported by competent substantial evidence and that they are not arbitrary or capricious. These findings were based on the expert testimony and other scientific evidence presented at the hearing. Additionally, the judge rejected arguments by the property owners that the proposed rules fail to contain adequate standards, and that the District's objectives could be met by a lower cost proposal.
Although the administrative law judge determined that the proposed rules were supported by the evidence, he concluded that most of them were invalid as a matter of law. The major theme of the final order is that the rules are an invalid exercise of legislative authority because they are not within "particular powers and duties" granted by the enabling statute. See § 120.52(8) Fla. Stat. (Supp.1996). Specifically, the judge held that rule 40C-41.023 defining the Spruce Creek and Tomoka River Hydrologic Basins and rules 40C-41.063(6)(a)-(d) containing the four new standards within the basins were invalid as a violation of section 120.52(8)(b) because they exceed the agency's grant of rulemaking authority. As additional authority, the judge stated that the recharge standard and the riparian habitat protection zone were invalid as a violation of section 120.52(8)(c) because they enlarge, modify or contravene the law implemented. The District appeals this order.
As a preliminary matter, we note that the Legislature has changed the burden of persuasion in proceedings to challenge a proposed administrative rule. Before the 1996 revision of the Administrative Procedure Act, the courts had held that a rule was presumed to be valid, and that the party challenging a rule has the burden of establishing that it is invalid. See Agrico Chem. Co. v. State, Dept. of Envtl. Regulation, 365 So.2d 759 (Fla. 1st DCA 1978); Dravo Basic Materials Co., Inc. v. State, Department of Transp., 602 So.2d 632 (Fla. 2d DCA 1992). Although these principles continue to apply in a proceeding to challenge an existing rule, see section 120.56(3), as well as a proceeding to challenge an agency statement defined as a rule, see section 120.56(4), the burden of persuasion is now reversed in a proceeding under section 120.56(2) to challenge a proposed rule.
According to section 120.56(2)(c) Florida Statutes (Supp.1996), a proposed rule is "not presumed to be valid or invalid." However, section 120.56(2)(a) Florida Statutes (Supp.1996), plainly requires the agency to establish the validity of a proposed rule once it has been properly challenged. Subsection (2)(a) provides in material part:
The petition [challenging the rule] shall state with particularity the objections to the proposed rule and the reasons that the proposed rule is an invalid exercise of delegated legislative authority. The Agency then has the burden to prove that the proposed rule is not an invalid exercise of delegated legislative authority as to the objections raised.
The administrative law judge interpreted this language to mean that the agency has the ultimate burden of establishing that a proposed rule is valid, but that the challenger still has the burden of going forward with the evidence supporting the objections. On this point, we agree. Section 120.56(2)(a) requires the agency to justify a proposed rule, but that does not relieve the challenger of the duty to present the evidence necessary to provide a preliminary factual basis for the objections.
Nothing in section 120.56(2) requires the agency to carry the burden of presenting evidence to disprove an objection alleged in a petition challenging a proposed rule. Moreover, it would be impractical to impose such a requirement. As the administrative law judge explained, a petition challenging a proposed rule might include numerous objections, not all of which remain in controversy by the time of the hearing. If the agency had the burden of going forward with the evidence, it would be forced to rebut every *77 objection made in the petition, if for no other reason than to avoid the possibility of an award of attorneys' fees for its failure to justify the proposed rule. Therefore, we prefer the more practical approach taken by the administrative law judge here. A party challenging a proposed rule has the burden of establishing a factual basis for the objections to the rule, and then the agency has the ultimate burden of persuasion to show that the proposed rule is a valid exercise of delegated legislative authority.
The controversy regarding the validity of the proposed rules in this case presents a broad question regarding the extent to which rulemaking authority has been restricted by the 1996 revision of the Administrative Procedure Act. We begin our analysis of this issue by considering the applicable constitutional principles. Rulemaking is a legislative function, and as such, it is within the exclusive authority of the Legislature under the separation of powers provision of the Florida Constitution. See Art. II, § 3, Fla. Const. (1968). Generally, an administrative rule is valid only if adopted under a proper delegation of legislative authority. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978); Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla.1991). It follows that a state administrative agency has no authority to adopt rules apart from the authority delegated to it by the Legislature. This precept is incorporated in section 120.54(1)(e), Florida Statutes (Supp.1996), which states in material part that "[n]o agency has inherent rulemaking authority."
Section 120.52(8), Florida Statutes (Supp. 1996), defines the phrase "invalid exercise of legislative authority" as "an action which goes beyond the powers, functions and duties delegated by the Legislature." Following this definition, the statute enumerates seven circumstances in which a proposed or existing rule would be an invalid exercise of delegated legislative authority:
(a) The agency has materially failed to follow the applicable rulemaking procedures or requirements set forth in this chapter;
(b) The agency has exceeded its grant of rulemaking authority, citation to which is required by s. 120.54(3)(a)1.;
(c) The rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(3)(a)1.;
(d) The rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency;
(e) The rule is arbitrary or capricious;
(f) The rule is not supported by competent substantial evidence; or
(g) The rule imposes regulatory costs on the regulated person, county, or city which could be reduced by the adoption of less costly alternatives that substantially accomplish the statutory objectives.
Although the disputed rules were initially challenged on nearly all of these enumerated grounds, the controversy between the parties now involves only subsection (b) pertaining to rules that exceed the grant of rulemaking authority and subsection (c) relating to rules that enlarge, modify, or contravene the specific provision of the law implemented.
Following the seven enumerated grounds for challenging a rule, section 120.52(8) provides a set of general standards to be used in determining the validity of a rule in all cases. These standards are set out in the closing paragraph of the statute as follows:
A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement, interpret or make specific the particular powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than the particular powers and duties conferred by the same statute.
*78 These standards are restated in section 120.536(1), Florida Statutes (Supp.1996), which contains additional provisions not at issue here.
In the present case, the statutes purporting to establish the authority for the proposed rules are contained within Chapter 373, Florida Statutes, which is known as the Florida Water Resources Act of 1972. This Chapter begins with a statement that the "waters in the state are among its basic resources", see section 373.016(1), Florida Statutes, and then continues for more than one hundred pages to lay out the legislative plan to protect state waters. Part IV of Chapter 373 is entitled "Management and Storage of Surface Waters." Contained within Part IV is section 373.413, Florida Statutes, which provides:
[T]he governing board [of the Water Management District] or the department may require such permits and impose such reasonable conditions as are necessary to assure that the construction or alteration of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works will comply with the provisions of this part and applicable rules promulgated thereto and will not be harmful to the water resources of the district. The department or the governing board may delineate areas within the district wherein permits may be required.
Whether this statute delegates the proper authority to adopt the proposed rules at issue here depends on the extent to which section 120.52(8) restricts an agency's rulemaking authority in general. To answer this question we look first to the parts of section 120.52(8) that are clear and unambiguous. The courts determine the legislative intent of a statute primarily from the language used in the statute itself. See S.R.G. Corp. v. Department of Revenue, 365 So.2d 687 (Fla. 1978); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla.1982); State v. Hodges, 506 So.2d 437 (Fla. 1st DCA 1987). If the language is clear and unambiguous, the court must apply the statute as it was written and may not employ extrinsic aides to statutory construction. See Rhodes v. State, 704 So.2d 1080 (Fla. 1st DCA 1997).
The conclusions most easily drawn from the language of section 120.52(8) are those found in the statements about what is not a valid legal basis for the adoption of a rule. Section 120.52(8) provides that "[a] grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule" and then explains that "a specific law to be implemented is also required." This part of the statute plainly prohibits the adoption of a rule that purports to be based entirely on a general grant of rulemaking authority. A grant of rulemaking authority is necessary, but not alone sufficient to support the rule. The agency must also show that its rule implements a specific statute.
In a similar vein, section 120.52(8) provides that an agency shall not have authority to adopt a rule implementing "statutory provisions setting forth general legislative intent or policy." Here again, the Legislature has described a circumstance in which an agency is not authorized to adopt rules. A rule is not a valid exercise of delegated legislative authority merely because it is founded on an expression of legislative intent or policy. This provision is clear on its face and it is consistent with the requirement that a rule must implement a specific statute.
Another clear directive in section 120.52(8) is expressed in the statement that "[n]o agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious." Of course, an administrative rule must not be arbitrary or capricious, as one of these deficiencies alone would be a ground to invalidate the rule under the plain language of section 120.52(8)(e), Florida Statutes (Supp.1996). The significant part of this revision is that a rule is not valid merely because it is "reasonably related" to the enabling legislation.
Before the 1996 revision, the courts had held that a rule is a valid exercise of delegated legislative authority if it is reasonably related to the enabling statute and not arbitrary and capricious. See General Tel. Co. of Fla. v. Florida Pub. Serv. Comm'n, 446 So.2d 1063 (Fla.1984); Department of Labor *79 and Employment Sec., Div. of Workers' Compensation v. Bradley, 636 So.2d 802 (Fla. 1st DCA 1994); Florida Waterworks Ass'n v. Florida Pub. Serv. Comm'n, 473 So.2d 237 (Fla. 1st DCA 1985); Department of Prof'l Regulation, Bd. of Med. Exam'rs v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984); Agrico Chem. Co. v. State, Dept. of Envtl. Regulation, 365 So.2d 759 (Fla. 1st DCA 1978); Florida Beverage Corp., Inc. v. Wynne, 306 So.2d 200 (Fla. 1st DCA 1975). It is clear from the language of section 120.52(8) that the Legislature intended to overrule these decisions to the extent that they established the test to determine the validity of a rule.
Because rulemaking is a legislative function, the Legislature had authority to replace a judicially created test to determine the validity of a rule. With the advent of section 120.52(8), an administrative agency can no longer justify a rule on the ground that it is reasonably related to the enabling statute. In this part of the statute, the Legislature has plainly said that a rule is not valid merely because the agency can show that it is somehow relevant to the objectives stated in the law.
This brings us to a more difficult task; that is, to identify and define the kind of delegation that is sufficient to support a rule. On this point, section 120.52(8) is not as clear. The statute provides in relevant part that "[a]n agency may adopt only rules that implement, interpret, or make specific the particular powers and duties granted by the enabling statute." Courts may interpret the terms used in a statute according to their ordinary dictionary definitions, see WFTV, Inc. v. Wilken, 675 So.2d 674 (Fla. 4th DCA 1996), but the phrase "particular powers and duties" in section 120.52(8), could have more than one meaning.
The use of the term "particular" in this phrase could signify that the powers and duties conferred on the agency must be identified by some defining characteristic or that they must be described in detail. According to Webster's Dictionary, the term "particular" means: 1: "of, relating to, or being a single person or thing the particular person I had in mind$ 2: obs PARTIAL 3: of, relating to, or concerned with details gave us a very particular account of the trip$...." Merriam-Webster's Collegiate Dictionary, 847 (10th Ed.1996). Which of these meanings the Legislature ascribed to the term "particular" is not clear from the text of section 120.52(8) alone.
If the language used in a statute is ambiguous, the courts may resort to the principles of statutory construction to determine the legislative intent. See Holly v. Auld, 450 So.2d 217 (Fla.1984). In the present case, the language of section 120.52(8) could refer to one of two different kinds of restrictions on an agency's rulemaking power. The statute could mean that the powers and duties delegated by the enabling statute must be particular in the sense that they are identified (and therefore limited to those identified) or in the sense that they are described in detail.
The administrative law judge interpreted the phrase "particular powers and duties" to mean that the enabling statute must "detail" the powers and duties that will be the subject of the rule. He concluded that the rules proposed by the District were invalid because the "language [of the enabling statute] is merely a general, nonspecific description of the agency's duties." The judge stated that under the present law, "a rule must implement statutes which describe more specific programs." We disagree. In our view, the term "particular" in section 120.52(8) restricts rulemaking authority to subjects that are directly within the class of powers and duties identified in the enabling statute. It was not designed to require a minimum level of detail in the statutory language used to describe the powers and duties.
We consider it unlikely that the Legislature intended to establish a rulemaking standard based on the level of detail in the enabling statute, because such a standard would be unworkable. The courts are bound to interpret ambiguous statutes in the most logical and sensible way. If possible, the court must avoid an interpretation that produces an unreasonable consequence. See *80 Wakulla County v. Davis, 395 So.2d 540 (Fla.1981). A standard based on the precision and detail of an enabling statute would produce endless litigation regarding the sufficiency of the delegated power. Section 120.52(8) provides that a rule can implement, interpret, or make specific, the powers and duties granted by the enabling statute. (Emphasis added.) It follows from this statement that the enabling statute can be, and most likely will be, more general than the rule. Just how general the statute can be is not explained.
A standard based on the sufficiency of detail in the language of the enabling statute would be difficult to define and even more difficult to apply. Specificity is a subjective concept that cannot be neatly divided into identifiable degrees. Moreover, the concept is one that is relative. What is specific enough in one circumstance may be too general in another. An argument could be made in nearly any case that the enabling statute is not specific enough to support the precise subject of a rule, no matter how detailed the Legislature tried to be in describing the power delegated to the agency. Consequently, it is more likely that the Legislature used the term "particular" to mean that the powers and duties must be identifiable as powers and duties falling within a class.
This interpretation of the term "particular" in section 120.52(8) is also consistent with other statutory provisions within the Administrative Procedure Act. Statutes are not construed in isolation. On the contrary, the court must interpret an ambiguous statute in the context of other statutes on the same general subject. See Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation District, 274 So.2d 522 (Fla.1973). Here, we adopt the less restrictive of the two possible interpretations of section 120.52(8), because that is necessary to avoid potential conflicts with presumptive rulemaking provisions in the Administrative Procedure Act.
Section 120.54(1)(a), Florida Statutes (Supp.1996), states that "[r]ulemaking is not a matter of agency discretion." This statute places an affirmative duty on the part of all state agencies to codify their policies in rules adopted in the formal rulemaking process. The term "rule" is defined broadly in section 120.52(15) to include an "agency statement of general applicability." These sections suggest that rulemaking authority is not restricted to those situations in which the enabling statute details the precise subject of a proposed rule. The legislative command directing the agency to adopt rules carries with it an implication that the agencies have authority to adopt rules, at least within the class of powers conferred by the applicable enabling statute.
Otherwise, an administrative agency might find itself caught between conflicting demands in the Administrative Procedure Act. If the lack of detail in the enabling statute could be said to prohibit an agency from adopting rules under section 120.52(8), the agency might not be able to carry out the very task the Legislature assigned to it. At the same time, the agency would be directed by section 120.54 to adopt rules to codify its policies. Hence, the Legislature could not have meant to condition rulemaking authority on the existence of a statute describing in detail the subject of each potential rule. When sections 120.52(8) and 120.54(1) are considered together, it appears more likely that the Legislature meant to limit rulemaking by channeling necessary legislative power within identifiable classifications within the enabling statute.
For these reasons, we conclude that the proper test to determine whether a rule is a valid exercise of delegated authority is a functional test based on the nature of the power or duty at issue and not the level of detail in the language of the applicable statute. The question is whether the rule falls within the range of powers the Legislature has granted to the agency for the purpose of enforcing or implementing the statutes within its jurisdiction. A rule is a valid exercise of delegated legislative authority if it regulates a matter directly within the class of powers and duties identified in the statute to be implemented. This approach meets the legislative goal of restricting the agencies' authority to promulgate rules, and, at the same time, ensures that the agencies will have the authority to perform the essential *81 functions assigned to them by the Legislature.
The class of powers and duties delegated to an agency could be defined broadly or specifically depending on the Legislature's objective. For example, a statute authorizing rules pertaining to the general operating functions of an agency might be broadly stated to enable the agency to promulgate a variety of rules, all of which are within the general class. In contrast, a statute authorizing a regulatory rule might be narrowly tailored to restrict the agency's authority within a precise range. These decisions are ultimately within the province of the Legislature.
Although these principles apply in all cases, the analysis of a given case also depends on the specific statutory ground for challenging the rule. Section 120.52(8)(b) provides that a rule is invalid if "[t]he agency has exceeded its grant of rulemaking authority." Additionally, section 120.52(8)(c) provides that a rule is invalid if it "enlarges, modifies, or contravenes the specific provisions of law implemented." These subsections address two different problems: the former pertains to the adequacy of the grant of rulemaking authority and the latter relates to limitations imposed by the grant of rulemaking authority. We also note that some of the other grounds for invalidating a rule have little to do with the delegation of legislative power. For example, the extent of the agency's rulemaking authority is not likely to be an issue at all if the rule is challenged under section 120.52(8)(a) on the ground that the "agency has materially failed to follow the applicable rulemaking procedures."
Based on these principles, we conclude that the District had authority to adopt all of the proposed rules at issue. Section 373.413, Florida Statutes, authorized the District to establish permitting criteria for the protection of water resources and, specifically, to "delineate areas within the district wherein permits may be required." Rules 40C-4 and 40C-41 establishing the Tomoka River and Spruce Creek Hydrologic Basins fall directly within the class of powers delegated by this statute. The Legislature gave the District authority to identify geographic areas that require greater environmental protection and to impose more restrictive permitting requirements in those areas, and the District did just that. By any name, the Tomoka River and Spruce Creek Hydrologic Basins are delineated geographic areas in which permits are required.
Likewise, we conclude that the four new standards are within the authority granted to the District by the enabling statute. Section 373.413 grants the District the power to "require such permits and impose such reasonable conditions as are necessary to assure that the construction or alteration of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works will comply with the provisions of this part ... [and] will not be harmful to the water resources of the district." This statute defines the class of appropriate subjects for rulemaking, and all four of the proposed standards fall within the class. Section 120.52(8) does not require the Legislature to refer to specific topics such as runoff, recharge, and floodplain requirements in the enabling statute. If that were so, enabling statutes would have to be as detailed as the rules themselves, and the point of rulemaking would be defeated entirely.
In summary, we hold that all of the rules proposed by the District are based on a valid exercise of delegated legislative authority. In our view, the District had authority to create the Tomoka River and Spruce Creek Hydrologic basins, and to establish the four new standards pertaining to runoff, recharge, stormwater systems, and riparian wildlife. Therefore, we reverse the decision of the administrative law judge.
Reversed.
BOOTH and VAN NORTWICK, JJ., concur.