724 So.2d 100 (1998)
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, Appellant,
v.
CALDER RACE COURSE, INC., a Florida Corporation; Tropical Park, Inc., a Florida Corporation; Gulfstream Racing Association, a Florida Corporation; and Investment Corporation of Palm Beach, et al., Appellees.
No. 97-2704.
District Court of Appeal of Florida, First District.
July 29, 1998.
Rehearing Denied September 15, 1998.
Lisa S. Nelson, Deputy General Counsel, Department of Business and Professional Regulation, Tallahassee, for Appellant.
Harold F.X. Purnell of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee, for Appellees Investment Corporation Course, Inc., et al.
Wilbur E. Brewton, Kelly B. Plante and Kenneth J. Plante of Gray, Harris & Robinson, P.A., Tallahassee, for Appellees Calder Race Course, Inc., Tropical Park, Inc., and Gulfstream Park Racing Association, Inc.
ERVIN, Judge.
This appeal is from a final order entered in consolidated rule challenges to proposed rules published by the Division of Pari-Mutuel Wagering (Division), which were intended to regulate pari-mutuel wagering under chapter 550, Florida Statutes. The order held the proposed rules invalid exercises of delegated legislative authority. We affirm, *101 because the rule at issue in this appeal was not authorized by section 550.0251, Florida Statutes, under the 1996 amendments to sections 120.52(8) and 120.536(1), Florida Statutes.
The challengers, which hold permits and licenses to operate pari-mutuel facilities and conduct pari-mutuel wagering, filed a joint petition contesting numerous proposed rules, including Florida Administrative Code Rule 61D-2.002.[1] The enabling authority cited in the rule is sections 550.0251(3), specifically, and 550.0251, generally.
In her order invalidating proposed rule 61D-2.002, the administrative law judge (ALJ) observed that before the enactment of the 1996 amendments to chapter 120, Florida Statutes, an agency's rulemaking authority was implied to the extent necessary to properly implement the agency's statutory duties and responsibilities. Thus, if the enabling statute simply stated that an agency "may make such rules and regulations as may be necessary to carry out the provisions of this Act," the regulations were deemed valid so long as they were reasonably related to the purposes of the enabling legislation and were not arbitrary and capricious. The ALJ concluded, however, that this principle had been repealed by the 1996 amendments to section 120.52(8) and the creation of section 120.536(1), Florida Statutes. Under the current law, the agency now has the burden of proving that a proposed rule is not an invalid exercise of delegated legislative authority under section 120.56(2), Florida Statutes. She further found that the "reasonably related" standard is no longer sufficient. Rather, the agency must now show a grant of specific legislative authority for the rule. Based on these changes, the ALJ decided that the agency could no longer rely on prior authority which had upheld the predecessor to rule 61D-2.002. Moreover, the ALJ concluded that because there was no grant of specific legislative authority, the rule was an invalid exercise of delegated legislative authority.
Appellant first argues that the ALJ erred in her interpretation of sections 120.52(8) and 120.536(1), Florida Statutes (Supp.1996), by requiring a specific grant of authority, as opposed to a specific law to be implemented. Although the Division acknowledges that the 1996 amendments made significant changes to chapter 120, it contends that the amendments do not change the standards for determining the validity of proposed rules. Instead, their effect is simply to fix the inquiry on whether the proposed rule is reasonably related to the law the proposed rule seeks to implement, rather than on whether it is reasonably related to the general purpose or legislative intent behind the enabling statute. It continues that the agency has a grant of general rulemaking authority and a specific law to be implemented, section 550.0251, which delegates to the agency the power to investigate and search. Moreover, regulation is necessary for the protection of the general welfare, morals and safety of the public; therefore, the agency's actions should be judged on a reasonableness standard. Finally, appellant points out that Florida Administrative Code Rule 7E-4.02(23), the predecessor to rule 61D-2.002, was upheld in Federman v. State, Department of Business Regulation, Division of Pari-Mutuel Wagering, 414 So.2d 28 (Fla. 3d DCA 1982).
We agree entirely with the ALJ that the review standards for assessing the validity of proposed rules have been drastically altered *102 by the 1996 amendments to Florida's Administrative Procedure Act. As we explained in St. Johns River Water Management District v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA 1998), the 1996 legislature intended, through its enactment of sections 120.52(8) and 120.536(1), Florida Statutes (Supp.1996), to overrule earlier Florida decisions to the extent that they had held a rule was a valid exercise of delegated legislative authority if it was reasonably related to the enabling statute and not arbitrary or capricious.
Although the result we reach in the instant caseapproval of the ALJ's order invalidating the ruleis not the same as that decided in St. Johns, we adopt the reasoning employed therein. We reiterate that the term "particular powers and duties granted by the enabling statute," as used in amended sections 120.52(8) and 120.536(1),[2] requires a determination of whether the rule "falls within the range of powers the Legislature has granted to the agency for the purpose of enforcing or implementing the statutes within its jurisdiction." Id. at 80 (emphasis added).
In applying the above test to the proposed rule at bar, we have no difficulty in concluding that rule 61D-2.002, authorizing searches of persons and places within a permitted pari-mutuel wagering facility, is an invalid exercise of delegated legislative authority. As stated, the rule refers to section 550.0251(3), particularly, and section 550.0251, generally, as the statutes which the proposed rule implements. It is clear, however, that the statutory provisions fail to convey the requisite power to the agency to conduct searches. Subsection 550.0251(3) merely empowers the Division to "adopt reasonable rules for the control, supervision, and direction of all applicants, permittees, and licensees and for the holding, conducting, and operating of all racetracks, race meets, and races held in this state." This general grant of rulemaking authority, while necessary, is not sufficient to validate rule 61D-2.002 under the 1996 amendment to section 120.52(8). A specific law to be implemented was also required, and nothing in this subsection identifies the power that the rule attempts to implement, i.e., to search.
If the rule is to pass the test demanded by sections 120.52(8) and 120.536(1), it must do so through the powers delegated generally to the Division under section 550.0251. The pertinent provisions thereof are as follows:
(4) The division may take testimony concerning any matter within its jurisdiction and issue summons and subpoenas for any witness and subpoenas duces tecum in connection with any matter within the jurisdiction of the division under its seal and signed by the director.
(5) The division may adopt rules establishing procedures for testing occupational licenseholders officiating at or participating in any race or game at any parti-mutuel facility under the jurisdiction of the division for a controlled substance or alcohol and may prescribe procedural matters not in conflict with s. 120.633.
(6) In addition to the power to exclude certain persons from any pari-mutuel facility in this state, the division may exclude any person from any and all pari-mutuel facilities in this state for conduct that would constitute, if the person were a licensee, a violation of this chapter or the rules of the division....
* * *
(9) The division may conduct investigations in enforcing this chapter.... For the purposes of this subsection, an investigation *103 is considered to be active while it is being conducted with reasonable dispatch and with a reasonable, good faith belief that it could lead to an administrative, civil, or criminal action by the division or another administrative or law enforcement agency....
(Emphasis added.)
The only identifiable authority in section 550.0251 that could conceivably be said to empower the Division with the right to conduct warrantless searches is found in subsection (9), relating to the Division's power to carry out "investigations." Undisputably an investigation can be conducted in many ways other than by a search. The distinction between an investigation that does not involve a search and one that does is highly significant. In the former situation, the benefits of the Fourth Amendment to the United States Constitution are not implicated, whereas in the latter they generally are. As the United States Supreme Court explained in Camara v. Municipal Court of City & County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the protections of the Fourth Amendment apply when a search of private property is conducted to enforce compliance with regulations designed to further social conditions and to protect the general welfare. Prior to Camara, Fourth Amendment benefits had been invoked primarily within the context of criminal searches and seizures, where society's immediate interest lay in apprehending and punishing individual violations of criminal laws. The Court also recognized that routine, regulatory inspections are less hostile intrusions into privacy interests and that the probable cause standard of the Fourth Amendment required to justify such intrusions is to be tested by the reasonableness of the conduct. That test, the Court continued, is "balancing the need to search against the invasion which the search entails." Camara, 387 U.S. at 537, 87 S.Ct. at 1735, 18 L.Ed.2d at 940. See also Roche v. State, 462 So.2d 1096, 1099-1100 (Fla.1985).
The Court has recognized exceptions to the general rule that warrantless inspections are unconstitutional as violative of the Fourth Amendment in cases such as Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor dealer); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (gun dealer), and Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (stone quarry). The reason these exceptions have been allowed involves the nature of the business regulated. As the Court pointed out in Marshall v. Barlow's, Inc., 436 U.S. 307, 313, 98 S.Ct. 1816, 1821, 56 L.Ed.2d 305, 312 (1978):
Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise. Liquor (Colonnade) and firearms (Biswell) are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.
Industries such as these fall within the "certain carefully defined classes of cases," referenced in Camara, [387 U.S.] at 528, 87 S.Ct. at 1731. The element that distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware. "A central difference between those cases [Colonnade and Biswell] and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade.... The businessman in a regulated industry in effect consents to the restrictions placed upon him." Almeida-Sanchez v. United States, 413 U.S. 266, 271, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973).
(Citation omitted.)
Even businesses that are heavily regulated and enjoy no reasonable expectation of privacy, such as the liquor industry, are not altogether excluded from the Fourth Amendment's benefits. For example, in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Court addressed the question whether a warrantless search of a federally licensed alcohol dealer could be conducted in the absence of *104 any statutory authorization for same. There, federal inspectors, without a warrant and without the owner's permission, forcibly entered a locked storeroom and seized illegal liquor.
Emphasizing the historically broad authority of the government to inspect closely regulated businesses, see Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Court acknowledged that while Congress had ample power "to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand," Colonnade, 397 U.S. at 76, 90 S.Ct. at 777, 25 L.Ed.2d at 64, it nonetheless suppressed the evidence seized because Congress had not expressly provided for forcible entry in the absence of a warrant. Congress had instead given the government an exclusive remedy by making it a criminal offense for the licensee to refuse admission to the inspectors under 26 U.S.C. § 7342. The Court based its decision on the search and seizure clause of the Fourth Amendment, noting that if the statute provides "no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." Id. at 77, 90 S.Ct. at 777, 25 L.Ed.2d at 64. The lesson derived from Colonnade is that if the government is to be given the right to conduct a warrantless search of a closely regulated business, the Fourth Amendment demands that the language of the statute delegating such power do so in clear and unambiguous terms.
We find the facts in Colonnade highly instructive with regard to those at bar. We can assume that the operator of a pari-mutuel wagering facility enjoys no greater expectation of privacy than the owner of premises where liquor is sold, because a wagering facility is as closely regulated as any of the industries the Court enumerated in Marshall v. Barlow's Inc. Chapter 550, Florida Statutes, provides the regulations encumbering the operation of pari-mutuel facilities in great detail. A right to search by the Division, however, is not one that is particularly identified. We need not decide whether such a power, if specifically included within the enabling legislation, would survive a constitutional challenge. Nevertheless, we do not believe the legislature would so cavalierly disregard the warrant requirement of the Fourth Amendment by delegating to the Division, in the most general and, indeed, vague terms, the power to conduct searches, as the Division has contended.[3] We consider, rather, that section 550.0251(9)'s terms must be strictly construed, because the power given to the Division to investigate alleged violations of chapter 550, which could lead to the institution of administrative, civil or criminal actions, should be deemed penal in its effect. It is well established that penal statutes and highly regulatory laws are subject to strict construction and may not be extended by interpretation. See Ex parte Knight, 52 Fla. 144, 41 So. 786 (1906).
A restrictive interpretation of section 550.0251 is also supported by pertinent provisions of the Administrative Procedure Act, and the analysis employed in St. Johns. There we commented that the language in section 120.52(8)(b), providing that a rule may be determined invalid if "[t]he agency has exceeded its grant of rulemaking authority," applies to the adequacy of the grant of rulemaking authority. St. Johns, No. 97-2996, 717 So.2d at 81. This provision should be read in pari materia with that in the closing paragraph of sections 120.52(8) and 120.536(1), empowering an agency to "adopt only rules that implement, interpret, or make specific the particular powers and duties granted by the enabling statute," and stating specifically that "[s]tatutory language ... generally describing the powers and functions of an agency shall be construed to extend no further than the particular powers and duties conferred by the same statute."
In St. Johns we interpreted the above language to mean that the rule or proposed rule could be considered "a valid exercise of delegated legislative authority [only] if it regulates *105 a matter directly within the class of powers and duties identified in the statute to be implemented." Id. at 80 (emphasis added). Obviously, there is nothing in the class of powers and duties identified in section 550.0251 that delegates to the Division the right to search persons or places within pari-mutuel wagering facilities, or any provision in the statute deeming a licensee of same to have waived the protections of the Fourth Amendment by consenting to such searches. Cf. Moore v. State, 442 So.2d 215, 216 (Fla. 1983) (warrantless search of junkyard dealer's premises sustained because "[o]wners of subject businesses are on notice by the clear language of the statute that their premises will be inspected.").
We therefore approve the final order of the ALJ invalidating the proposed rule, as well as the analysis the ALJ used in reaching her result, which closely parallels that adopted by the court in St. Johns, which we follow today.
AFFIRMED.
BOOTH and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] Proposed rule 61D-2.002 provides:

61D-2.002 Authorized Search.
The Division, investigating violations of Chapter 550, Florida Statutes, or enforcing the provisions thereof, and the rules promulgated thereunder, shall have the power to permit persons authorized by the Division to search the person, or to enter and search the stables, rooms, lockers, vehicles and automobiles or other places within a pari-mutuel wagering permitted facility at which a race, game meeting, or pari-mutuel wagering is held, or other permitted or licensed places where racing animals eligible to race at said race meeting are kept. Searches of persons shall be limited to those individuals licensed by the Division on a permitted facility. Each licensee, in accepting a license, does thereby consent to such search. Division personnel who are authorized to conduct searches are as follows: Division Investigators, Chief Inspectors, Division Veterinarians, Division Judges/Stewards, Regional Managers, and Auditing Field Personnel. All Division personnel authorized to conduct searches must follow the Division or Pari-Mutuel Wagering's Search Guidelines, herein incorporated by reference.
[2] Section 120.52(8) provides:

A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement, interpret, or make specific the particular powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than the particular powers and duties conferred by the same statute.
Section 120.536(1) contains identical language.
[3] Contrast, for example, the explicit power given law enforcement officers by section 562.41, Florida Statutes (1995), to conduct warrantless searches of premises where alcoholic beverages are sold, as well as the provision therein that such licensees consent to searches and inspections without warrants.