714 So.2d 589 (1998)
INVESTMENT CORP. OF PALM BEACH d/b/a Palm Beach Kennel Club and Palm Beach Jai Alai, Calder Race Course, Inc., Tropical Park, Inc., and Gulfstream Park Racing Association, Appellants,
v.
DIVISION OF PARI-MUTUEL WAGERING, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, Appellee.
Nos. 97-3414, 97-2926.
District Court of Appeal of Florida, Third District.
July 8, 1998.
*590 Rutledge, Ecenia, Underwood, Purnell & Hoffman and Harold Purnell, Tallahassee; Gray Harris & Robinson and Wilbur E. Brewton and Kelly B. Plante, Tallahassee; Romanik, Huss, Paoli & Ivers, Hollywood, for appellants.
Lisa S. Nelson, Tallahassee, for appellee.
Before COPE, FLETCHER and SHEVIN, JJ.
FLETCHER, Judge.
In these consolidated cases, Calder Race Course, Inc. [Calder], Tropical Park, Inc. [Tropical], Gulfstream Park Racing Association [Gulfstream], and Investment Corp. of Palm Beach [Palm Beach Kennel Club] appeal a declaratory statement rendered by the Director of the Division of Pari-Mutuel Wagering of the State Department of Business and Professional Regulation [Division]. We hereby set aside the declaratory statement.
By petition the appellants requested the Division's opinion as to the applicability of certain statutory provisions in determining the distribution of uncashed tickets and breaks[1] generated from wagering on out-of-state thoroughbred races that are rebroadcast to Palm Beach Kennel Club and Palm Beach Jai Alai through Calder, Tropical, and Gulfstream. The Division issued a declaratory statement, noting therein:
"The Division is cognizant that a similar fact pattern may exist between other tracks in Florida and that the same dispute may reoccur between one of these Petitioners and a non-Petitioner. Therefore, the Division will initiate rulemaking to establish an agency statement of general applicability."
The Division then went on in the declaratory statement and provided its opinions on the issues raised by the petitions, but attempted to limit them to the appellants and their relationship with each other as to the matters questioned.
The appellants here correctly contend that once the Division reached the conclusion that the questions asked of it in the petitions had general applicability to the pari-mutuel industry, thus requiring rulemaking, the Division overstepped administrative *591 bounds when it issued the declaratory statement.[2] Declaratory statements are controlled by section 120.565, Florida Statutes (Supp.1996), subsection (1) of which provides:[3]
"Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances." (e.s.)
The statute contemplates that declaratory statements are appropriate where they deal with a petitioner's particular factual situation, but are not appropriate where they would result in agency statements of general applicability interpreting law and policy. See Sutton v. Department of Envtl. Protection, 654 So.2d 1047 (Fla. 5th DCA 1995); Mental Health Dist. Bd., II-B v. Dep't of Health & Rehabilitative Servs., 425 So.2d 160 (Fla. 1st DCA 1983). Where a declaratory statement provides a response which is not limited to specific facts and specific petitioners, but in reality adopts a broad agency policy or provides statutory or rule interpretations that apply to an entire class of persons, it will be set aside on appeal. See Tampa Elec. Co. v. Florida Dep't. of Community Affairs, 654 So.2d 998 (Fla. 1st DCA 1995); Regal Kitchens, Inc. v. Florida Dep't of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994).
Our review of the declaratory statement reveals that it construes various statutory provisions of general applicability to all pari-mutuel permitholders who conduct intertrack wagering on simulcast rebroadcasts of horse races. As we have already noted, the Division itself recognized the need for rulemaking and initiated it. Its instincts in this regard were excellent, except for those which led it to issue the declaratory statement in this situation wherein rulemaking is the proper procedure.
The declaratory statement is set aside.
SHEVIN, J., concurs.
COPE, Judge (dissenting).
I respectfully dissent. First, the issue addressed by the majority opinion was not preserved for appellate review. Second, the majority opinion misapprehends the declaratory statement statute.

I.
The two appellant racetracks had a business dispute over the division of certain funds generated from wagering on out-of-state thoroughbred races that are rebroadcast within Florida.[4] They petitioned the appellee agency for a declaratory statement, anticipating that the agency would either tell the racetracks to divide the funds, or award the disputed funds entirely to one of the two racetracks. The agency instead decided that the statutes relied on by the racetracks were inapplicable. The agency ruled that under a different provision of the pari-mutuel laws, the disputed funds escheat to the State School Fund. See § 550.1645, Fla. Stat. This ruling undoubtedly pleased the State School Fund, but displeased the racetracks.
Seeking to vacate the agency decision, the racetracks contend for the first time on appeal that the agency never should have issued a declaratory statementeven though the appellant racetracks were the very ones who requested the declaratory statement. This argument should be rejected out of hand because it is not preserved for appellate *592 review. The racetracks asked for a declaratory statement. The racetracks got a declaratory statement. Assuming arguendo that the agency erred by issuing a declaratory statement in these circumstances, any error was invited by the racetracks themselves. See Commission on Ethics v. Barker, 677 So.2d 254, 256 (Fla.1996) ("A party `cannot argue on appeal matters which were not properly excepted to or challenged before the [agency] and thus were not preserved for appellate review.'"); Kantor v. School Board of Monroe County, 648 So.2d 1266, 1267 (Fla. 3d DCA 1995) (same); Couch v. Commission on Ethics, 617 So.2d 1119, 1124 (Fla. 5th DCA 1993) (same).[5]

II.
On the merits, the majority errs in its interpretation of the declaratory statement provision of the Florida Administrative Procedure Act (APA). The declaratory statement mechanism was created in order to deal with the common citizen complaint that some agencies will not give the citizen a direct, binding answer on how the agency's statutes and rules apply to a citizen's individual case. Or, in another variation on the same theme, citizens complain that with some agencies, the administrative position varies from day to day, or varies from agency employee to agency employee. See Patricia A. Dore, Access to Florida Administrative Proceedings, 13 Fla. St. U.L.Rev. 965, 1052 (1986).
The drafters of the Florida APA adopted an innovative solution to this problem by creating the declaratory statement procedure under section 120.565, Florida Statutes. The current statute provides:
120.565 Declaratory statement by agencies.
(1) Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances.
(2) The petition seeking a declaratory statement shall state with particularity the petitioner's set of circumstances and shall specify the statutory provision, rule, or order that the petitioner believes may apply to the set of circumstances.
(3) The agency shall give notice of the filing of each petition in the next available issue of the Florida Administrative Weekly and transmit copies of each petition to the committee. The agency shall issue a declaratory statement or deny the petition within 90 days after the filing of the petition. The declaratory statement or denial of the petition shall be noticed in the next available issue of the Florida Administrative Weekly. Agency disposition of petitions shall be final agency action.
§ 120.565, Fla. Stat. (Supp.1996).
The purpose is "`to enable the public to secure definitive binding advice as to the applicability of agency-enforced law to a particular set of facts.'" Dore, supra, at 1052 (citation omitted). The intent is for declaratory statements to "be more widely available than the judicial [declaratory judgment] and that its use not be unduly restricted by artificial access barriers that would frustrate its primary purposes." Id. at 1053.
The majority opinion takes the position that "declaratory statements are appropriate where they deal with a petitioner's particular factual situation, but are not appropriate where they would result in agency statements of general applicability interpreting law and policy." Majority opinion at 591 (citations omitted). The statute says no such thing; indeed, the statute says the opposite.
In subsection (1), the statute creates the right to "seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances." § 120.565(1), Fla. Stat.
*593 In subsection (3), the statute requires the agency to "give notice of the filing of each petition in the next available issue of the Florida Administrative Weekly and transmit copies of each petition to the [Legislature's administrative procedures] committee." Id. § 120.565(3). The agency must issue the declaratory statement, or deny the petition, within ninety days. See id. The declaratory statement or denial is to be noticed in the next available issue of the Florida Administrative Weekly. See id.
By providing for publication of notice when the petition is filed, the Legislature clearly understood that the answer to a petition for declaratory statement may very well have impact on others who are regulated by the agency. See Chiles v. Department of State, Div. of Elections, 711 So.2d 151, 153-54 (Fla. 1st DCA 1998). Notice is published so that "[a]ny substantially affected party can intervene in a declaratory statement proceeding before the agency ...." Id. Equally clearly, the Legislature required publication of the resulting declaratory statement precisely becauseassuming the agency is operating evenhandedlythe interpretation announced in the declaratory statement will be applied to others who are similarly situated.
The point is that in enacting section 120.565, the Legislature created an important tool to vindicate the individual rights of individual citizens. The citizen has a right under the statute to get a clear, binding answer from the agency on how the agency's statute and rules apply to that individual citizen. The citizen not only has a right to an answer, but also a right to an answer within a time certain: ninety days. See § 120.565(3), Fla. Stat. (Supp.1996). "Agencies are required to give declaratory statements to persons who meet the minimum access standard ...." Dore, supra, at 1061.[6] It renders the statute nearly useless to say, as the majority does, that the agency cannot issue a declaratory statement if it will impact on anyone other than the petitioner. "[A] declaratory statement is not transformed into a rule merely because it addresses a matter of interest to more than one person." Chiles, 711 So.2d at 154.
In the declaratory statement in this case, the agency said it was "cognizant that a similar fact pattern may exist between other tracks in Florida and that the same dispute may reoccur between one of these Petitioners and a non-Petitioner. Therefore, the Division will initiate rulemaking to establish an agency statement of general applicability." This was a perfectly permissible step for the agency to take, but it did not thereby invalidate the declaratory statement. See Chiles, 711 So.2d at 153-54.
In Chiles, the Commissioner of Education petitioned the Department of State for a declaratory statement to determine whether a 1997 law precluded certification of statewide candidates for public campaign financing. "Governor Chiles and Comptroller Milligan intervened and argued that the issue was not subject to resolution by a declaratory statement because the declaration could be applied to any candidate running for a statewide office." Id. at 153. The Division of Elections rejected that objection and issued a final declaratory statement. See id. On appeal, the First District stated:
Commissioner Brogan had a right to seek a declaratory statement from the Division of Elections. He was a substantially affected party and the issue he presented was applicable to him in the particular circumstances of his case. The Division was authorized to reach the merits of the issue raised by the petition even though other statewide candidates might have also raised the same issue.
Id. at 155. Thus, the First District concluded that Commissioner Brogan was entitled to have his question ruled on, even though the *594 answer was potentially applicable to every candidate for statewide office in 1998. See id.
The same analysis applies here. It was proper for the agency to answer the petition for declaratory statement from the two racetracks in the present case, even though the answer is potentially applicable to other racetracks as well. It is true that there are statements in Chiles which, taken out of context, can be read to support the majority's position in this case. When the Chiles opinion is read as a whole, however, it is clear that, were this case pending in the First District, the First District would hold that this declaratory statement was properly issued.
In taking the position it does, the majority opinion fails to give effect to the 1996 amendments to the APA. The majority opinion acknowledges that the pre-1996 statute had said that a petitioner could request a declaratory statement "as it applies to the petitioner in his or her particular set of circumstances only." § 120.565, Fla. Stat. (1995) (emphasis added); majority opinion at 591 n.3. In the 1996 amendments, the word "only" was removed. See Chiles, 711 So.2d at 154. As explained in Chiles, "[the] deletion of the word `only' signifies that a petition for declaratory statement need not raise an issue that is unique. While the issue must apply in the petitioner's particular set of circumstances, there is no longer a requirement that the issue apply only to the petitioner." 711 So.2d at 154.[7]
In her analysis, Professor Dore made the commonsense observation that an agency is always allowed to give a citizen an interpretation of its statute and rules. See Dore, supra, at 1058-59, 1061-62. "Agencies are required to give declaratory statements to persons who meet the minimum access standard..., but agencies may in their discretion issue declaratory statements to persons who do not satisfy those access requirements. In either event, it is not proper for a reviewing court to reverse an agency's statement on nonsubstantive, technical grounds." Id. at 1061-62.
The declaratory statement should be affirmed.
NOTES
[1] "Breaks" are that portion of the pari-mutuel pool which is computed by rounding winnings paid to bettors down to the nearest multiple of ten cents. § 550.002(1), Fla. Stat. (Supp.1996).
[2] The appellants also challenge the Division's substantive opinions contained within the declaratory statement. As we are setting aside the declaratory statement we reach no conclusions on the correctness of the opinions expressed therein.
[3] Prior to its amendment in 1996, by section 17 of chapter 96-159, Laws of Florida, section 120.565 read in pertinent part:

"A declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his or her particular set of circumstances only." (e.s.)
As observed by the First District Court of appeal, Chiles v. Department of State, 711 So.2d 151 (Fla. 1st DCA 1998)(no. 97-3854), the 1996 deletion of "only" means that the issue raised by a petition for a declaratory statement need not apply solely to the petitioner. This has not, however, authorized the use of a declaratory statement in lieu of a rule. Chiles, 711 So.2d at 154.
[4] See majority opinion at 590.
[5] There is also a question of standing. The gist of the racetracks' position is that the ruling should be overturned because it might be applied to third parties. The racetracks are, however, the moving parties, not third parties. No third parties objected to the issuance of a declaratory statement. See infra note 3.
[6] According to Professor Dore, an agency does have discretion to deny a petition, but any denial is reviewable for abuse of discretion. See id. at 1055-56. By way of example, "`a refusal to rule would be justified where the ruling, though technically binding only on the agency and petitioner, would necessarily determine the legal rights of other parties who have not filed such a petition, and who are opposed to the resolution of the issue by declaratory ruling procedures ....'" Id. at 1056 n. 372 (some emphasis in original; some emphasis added). In the present case, there are no third-party objections, and the agency exercised its discretion to issue the declaratory statement.
[7] The line of cases relied on by the majority apparently originated in dictum in Florida Optometric Ass'n v. Department of Prof. Reg., Bd. of Opticianry, 567 So.2d 928, 937 (Fla. 1st DCA 1990). In my view, those cases misread the statutory intent. The earlier statute allowed a petition for declaratory statement "as it applies to the petitioner in his or her particular set of circumstances only." § 120.565, Fla. Stat. (1995). This language was intended to require simply that there be a live issue that affected the petitioner personally; "the declaratory statement proceeding is not available to one who seeks an agency's opinion on a purely hypothetical question unrelated to his personal situation." Dore, supra, at 1048. As suggested by Professor Dore's analysis, the Florida Optometric line of cases read too much into the pre-1996 phrase "his or her particular set of circumstances only." § 120.565, Fla. Stat. (1995).

In any event, in 1996 the word "only" was removed from the statute. After the 1996 amendments, it is very clear that a petition for declaratory statement cannot properly be objected to on the ground that the answer to the petition may apply to someone else. See Chiles, 711 So.2d at 154.