747 So.2d 374 (1999)
FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Petitioner,
v.
INVESTMENT CORP. OF PALM BEACH, d/b/a Palm Beach Kennel Club and Palm Beach Jai Alai, et al., Respondents.
No. 93,952.
Supreme Court of Florida.
November 4, 1999.
*375 Robin L. Suarez, Chief Assistant General Counsel, and Charles D. Peters, Assistant General Counsel, Tallahassee, Florida, for Petitioner.
Harold F.X. Purnell of Rutledge, Ecenia, Purnell & Hoffman, P.A., Tallahassee, Florida; Wilbur E. Brewton and Kelly B. Plante of Gray, Harris & Robinson, P.A., Tallahassee, Florida; and David S. Romanik of Romanik, Huss, Paoli & Ivers, Hollywood, Florida, for Respondents.
Jonathan Sjostrom of Steel, Hector & Davis, LLP, Tallahassee, Florida, for Phycor, Inc., Amicus Curiae.
LEWIS, J.
We have for review Investment Corp. of Palm Beach v. Division of Pari-Mutuel Wagering, 714 So.2d 589 (Fla. 3d DCA 1998), based on express and direct conflict with the decision in Chiles v. Department of State, 711 So.2d 151 (Fla. 1st DCA 1998). We have jurisdiction. See Art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we quash the decision under review and remand this case to the Third District for consideration of the merits of the declaratory statement discussed herein. We approve the First District's decision in Chiles.

MATERIAL FACTS AND PROCEEDINGS BELOW
Petitioner Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (Division), rendered a declaratory statement in response to a petition from respondents Investment Corp. of Palm Beach (Investment Corp.), Calder Race Course, Inc. (Calder), Tropical Park, Inc. (Tropical), and Gulfstream Park Racing Association (Gulfstream). Investment Corp., 714 So.2d at 590. The respondents sought the Division's opinion regarding the applicability of several statutory provisions in determining the distribution of uncashed tickets and breaks[1] generated from wagering on out-of-state thoroughbred races rebroadcast to Investment Corp. subsidiaries through Calder, Tropical, and *376 Gulfstream. Id. The declaratory statement read, in pertinent part:
The Division is cognizant that a similar fact pattern may exist between other tracks in Florida and that the same dispute may reoccur between one of these Petitioners and a non-Petitioner. Therefore, the Division will initiate rulemaking to establish an agency statement of general applicability.
On appeal, a divided Third District panel agreed with respondents that "once the Division reached the conclusion that the questions asked of it in the petitions had general applicability to the pari-mutuel industry, thus requiring rulemaking, the Division overstepped administrative bounds when it issued the declaratory statement." Id. at 590-91. After quoting the text of the statute controlling an agency's use of declaratory statements,[2] the majority opinion concluded:
The statute contemplates that declaratory statements are appropriate where they deal with a petitioner's particular factual situation, but are not appropriate where they would result in agency statements of general applicability interpreting law and policy. See Sutton v. Department of Envtl. Protection, 654 So.2d 1047 (Fla. 5th DCA 1995); Mental Health Dist. Bd., II-B v. Dep't of Health & Rehabilitative Servs., 425 So.2d 160 (Fla. 1st DCA 1983). Where a declaratory statement provides a response which is not limited to specific facts and specific petitioners, but in reality adopts a broad agency policy or provides statutory or rule interpretations that apply to an entire class of persons, it will be set aside on appeal. See Tampa Elec. Co. v. Florida Dep't. of Community Affairs, 654 So.2d 998 (Fla. 1st DCA 1995); Regal Kitchens, Inc. v. Florida Dep't of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994).
Our review of the declaratory statement reveals that it construes various statutory provisions of general applicability to all pari-mutuel permitholders who conduct intertrack wagering on simulcast rebroadcasts of horse races. As we have already noted, the Division itself recognized the need for rulemaking and initiated it. Its instincts in this regard were excellent, except for those which led it to issue the declaratory statement in this situation wherein rulemaking is the proper procedure.
Investment Corp., 714 So.2d at 591. On that basis, the majority set aside the Division's declaratory statement. Id.
Judge Cope dissented on both procedural and substantive grounds. First, he objected to even considering the racetracks' argument that the agency should not have issued a declaratory statement because that specific argument was not preserved for appellate review. Id. at 591-92 (Cope, J., dissenting). Then, in addressing the merits of the issue, Judge Cope explained that the purpose of the declaratory statement provision of the Administrative Procedure Act (APA) is "to enable the public to secure definitive binding advice as to the applicability of agency-enforced law to a particular set of facts." Id. at 592 (quoting Patricia A. Dore, Access to Florida Administrative Proceedings, 13 Fla. St. U.L.Rev. 965, 1052 (1986)). From that starting point, Judge Cope continued:

*377 The majority opinion takes the position that "declaratory statements are appropriate where they deal with a petitioner's particular factual situation, but are not appropriate where they would result in agency statements of general applicability interpreting law and policy." Majority opinion at 591 (citations omitted). The statute says no such thing; indeed, the statute says the opposite.
In subsection (1), the statute creates the right to "seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances." § 120.565(1), Fla. Stat.
In subsection (3), the statute requires the agency to "give notice of the filing of each petition in the next available issue of the Florida Administrative Weekly and transmit copies of each petition to the [Legislature's administrative procedures] committee." Id. § 120.565(3). The agency must issue the declaratory statement, or deny the petition, within ninety days. See id. The declaratory statement or denial is to be noticed in the next available issue of the Florida Administrative Weekly. See id.

By providing for publication of notice when the petition is filed, the Legislature clearly understood that the answer to a petition for declaratory statement may very well have impact on others who are regulated by the agency. See Chiles v. Department of State, Div. of Elections, 711 So.2d 151, 153-54 (Fla. 1st DCA 1998). Notice is published so that "[a]ny substantially affected party can intervene in a declaratory statement proceeding before the agency...." Id. Equally clearly, the Legislature required publication of the resulting declaratory statement precisely because assuming the agency is operating evenhandedlythe interpretation announced in the declaratory statement will be applied to others who are similarly situated.
The point is that in enacting section 120.565, the Legislature created an important tool to vindicate the individual rights of individual citizens. The citizen has a right under the statute to get a clear, binding answer from the agency on how the agency's statute and rules apply to that individual citizen. The citizen not only has a right to an answer, but also a right to an answer within a time certain: ninety days. See § 120.565(3), Fla. Stat. (Supp.1996). "Agencies are required to give declaratory statements to persons who meet the minimum access standard...." Dore, supra, at 1061. It renders the statute nearly useless to say, as the majority does, that the agency cannot issue a declaratory statement if it will impact on anyone other than the petitioner. "[A] declaratory statement is not transformed into a rule merely because it addresses a matter of interest to more than one person." Chiles, 711 So.2d at 154.
In the declaratory statement in this case, the agency said it was "cognizant that a similar fact pattern may exist between other tracks in Florida and that the same dispute may reoccur between one of these Petitioners and a non-Petitioner. Therefore, the Division will initiate rulemaking to establish an agency statement of general applicability." This was a perfectly permissible step for the agency to take, but it did not thereby invalidate the declaratory statement. See Chiles, 711 So.2d at 153-54.
. . . .
... It was proper for the agency to answer the petition for declaratory statement from the two racetracks in the present case, even though the answer is potentially applicable to other racetracks as well. It is true that there are statements in Chiles which, taken out of context, can be read to support the majority's position in this case. *378 When the Chiles opinion is read as a whole, however, it is clear that, were this case pending in the First District, the First District would hold that this declaratory statement was properly issued.
In taking the position it does, the majority opinion fails to give effect to the 1996 amendments to the APA. The majority opinion acknowledges that the pre-1996 statute had said that a petitioner could request a declaratory statement "as it applies to the petitioner in his or her particular set of circumstances only." § 120.565, Fla. Stat. (1995) (emphasis added); majority opinion at 591 n. 3. In the 1996 amendments, the word "only" was removed. See Chiles, 711 So.2d at 154. As explained in Chiles, "[the] deletion of the word `only' signifies that a petition for declaratory statement need not raise an issue that is unique. While the issue must apply in the petitioner's particular set of circumstances, there is no longer a requirement that the issue apply only to the petitioner." 711 So.2d at 154.7
Note 7: The line of cases relied on by the majority apparently originated in dictum in Florida Optometric Ass'n v. Department of Prof. Reg., Bd. of Opticianry, 567 So.2d 928, 937 (Fla. 1st DCA 1990). In my view, those cases misread the statutory intent. The earlier statute allowed a petition for declaratory statement "as it applies to the petitioner in his or her particular set of circumstances only." § 120.565, Fla. Stat. (1995). This language was intended to require simply that there be a live issue that affected the petitioner personally; "the declaratory statement proceeding is not available to one who seeks an agency's opinion on a purely hypothetical question unrelated to his personal situation." Dore, supra, at 1048. As suggested by Professor Dore's analysis, the Florida Optometric line of cases read too much into the pre-1996 phrase "his or her particular set of circumstances only." § 120.565, Fla. Stat. (1995).
In any event, in 1996 the word "only" was removed from the statute. After the 1996 amendments, it is very clear that a petition for declaratory statement cannot properly be objected to on the ground that the answer to the petition may apply to someone else. See Chiles, 711 So.2d at 154.
Investment Corp., 714 So.2d at 592-94 (Cope, J., dissenting) (footnote omitted).

LAW AND ANALYSIS
The conflict issue presents a classic case of whether a statute's plain language simply merits literal effect or requires this Court to apply principles of statutory construction. To resolve the issue presented, we begin our inquiry by reviewing a recent First District case construing a related administrative law statute. Thereafter, we will review the First District's opinion in Chiles, Professor Patricia Dore's law review article as it relates to this issue, the principles of statutory interpretation, and the opinions below.

First District Caselaw
After many years of discussion, the Legislature extensively revised Florida's Administrative Procedure Act (APA) in 1996. See ch. 96-159, Laws of Fla. (1996). One of the APA's most dramatic revisions occurred in section 120.52(8), Florida Statutes (Supp.1996),[3] which provides:
A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may only adopt rules that implement, interpret, or make specific the particular powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary or capricious, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory *379 language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than the particular powers and duties conferred by the same statute.

(Emphasis added). In an important case, this revised rulemaking standard was recently construed by an appellate court for the first time. See St. Johns River Water Management Dist. v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA 1998).
There, among other issues, the First District had to identify and define the kind of legislative delegation sufficient to support an administrative agency rule. Id. at 79. At the outset, the court found that the statute was ambiguous as to the degree of restrictions on an agency's rulemaking power. Id. That is, "[t]he statute could mean that the powers and duties delegated by the enabling statute must be particular in the sense that they are identified (and therefore limited to those identified) or in the sense that they are described in detail." Id. The First District then disagreed with the administrative law judge's interpretation that the Legislature intended the words "particular powers and duties" as requiring the enabling statute to "detail" the powers and duties that will be the subject matter of the rule, instead concluding:
In our view, the term "particular" in section 120.52(8) restricts rulemaking authority to subjects that are directly within the class of powers and duties identified in the enabling statute. It was not designed to require a minimum level of detail in the statutory language used to describe the powers and duties.
We consider it unlikely that the Legislature intended to establish a rulemaking standard based on the level of detail in the enabling statute, because such a standard would be unworkable. The courts are bound to interpret ambiguous statutes in the most logical and sensible way. If possible, the court must avoid an interpretation that produces an unreasonable consequence. See Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981). A standard based on the precision and detail of an enabling statute would produce endless litigation regarding the sufficiency of the delegated power. Section 120.52(8) provides that a rule can implement, interpret, or make specific, the powers and duties granted by the enabling statute. (Emphasis added.) It follows from this statement that the enabling statute can be, and most likely will be, more general than the rule. Just how general the statute can be is not explained.
A standard based on the sufficiency of detail in the language of the enabling statute would be difficult to define and even more difficult to apply. Specificity is a subjective concept that cannot be neatly divided into identifiable degrees. Moreover, the concept is one that is relative. What is specific enough in one circumstance may be too general in another. An argument could be made in nearly any case that the enabling statute is not specific enough to support the precise subject of a rule, no matter how detailed the Legislature tried to be in describing the power delegated to the agency. Consequently, it is more likely that the Legislature used the term `particular' to mean that the powers and duties must be identifiable as powers and duties falling within a class.
This interpretation of the term "particular" in section 120.52(8) is also consistent with other statutory provisions within the Administrative Procedure Act. Statutes are not construed in isolation. On the contrary, the court must interpret an ambiguous statute in the context of other statutes on the same general subject. See Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation District, 274 So.2d 522 (Fla.1973). Here, we adopt the less restrictive of the two possible interpretations of section 120.52(8), because that is necessary to *380 avoid potential conflicts with presumptive rulemaking provisions in the Administrative Procedure Act.
Section 120.54(1)(a), Florida Statutes (Supp.1996), states that "[r]ulemaking is not a matter of agency discretion." This statute places an affirmative duty on the part of all state agencies to codify their policies in rules adopted in the formal rulemaking process. The term "rule" is defined broadly in section 120.52(15) to include an "agency statement of general applicability." These sections suggest that rulemaking authority is not restricted to those situations in which the enabling statute details the precise subject of a proposed rule. The legislative command directing the agency to adopt rules carries with it an implication that the agencies have authority to adopt rules, at least within the class of powers conferred by the applicable enabling statute.
Id. at 79-80 (emphasis added).
Several months prior to deciding Consolidated-Tomoka Land, the First District considered the conflict case wherein Commissioner of Education Frank T. Brogan filed a petition for declaratory statement with the Division of Elections regarding whether certain new statutory language precluded the certification of candidates for public campaign financing. See Chiles, 711 So.2d at 153-54. The Governor and Comptroller intervened in the case, arguing that the issue should not be determined by a declaratory statement because it could be applied to any candidate running for a statewide office. Id. at 154. The Division of Elections subsequently issued the statement, concluding that it could not certify Commissioner Brogan for receipt of public campaign funds because the authorizing statute no longer allowed an encumbrance of funds from a terminated trust fund. Id. The Governor and Comptroller appealed both the issuance of the statement and the merits therein to the First District.
On appeal, the First District began its analysis by considering whether Commissioner Brogan's petition was the proper subject of a declaratory statement. The court ultimately concluded that it was, reasoning:
Prior versions of the Administrative Procedure Act support the Governor and Comptroller's position that a declaratory statement must be based on a unique set of facts. Section 120.565, Florida Statutes (1995), provided in part that "[a] declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his or her particular set of circumstances only" (emphasis added). This statute limited the use of a declaratory statement to an issue that could only apply to the party seeking the declaration. See, e.g., Florida Optometric Association v. Department of Professional Regulation, Board of Opticianry, 567 So.2d 928 (Fla. 1st DCA 1990) (interpreting identical language in an earlier statute).
However, the present case is subject to a less restrictive provision in the Administrative Procedure Act, as revised in 1996. Section 120.565(1), Florida Statutes (Supp.1996), states that "[a]ny substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or any rule or order of the agency, as it applies to the petitioner's particular set of circumstances." The deletion of the word "only" signifies that a petition for declaratory statement need not raise an issue that is unique. While the issue must apply in the petitioner's particular set of circumstances, there is no longer a requirement that the issue apply only to the petitioner.
A declaratory statement may not be employed in place of a rule to require compliance with general agency policy. See Regal Kitchens Inc. v. Florida Department *381 of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994); Tampa Electric Company v. Florida Department of Community Affairs, 654 So.2d 998 (Fla. 1st DCA 1995). If an agency is presented with a petition for a declaratory statement requiring a response that amounts to a rule, the agency should decline to issue the statement and initiate rulemaking. See Florida Optometric Association; Agency for Health Care Administration v. Wingo, 697 So.2d 1231 (Fla. 1st DCA 1997). However, a declaratory statement is not transformed into a rule merely because it addresses a matter of interest to more than one person.

The purpose of a declaratory statement is to address the applicability of a statutory provision or an order or rule of the agency in particular circumstances. See § 120.565, Florida Statutes (1996). A party who obtains a statement of the agency's position may avoid costly administrative litigation by selecting the proper course of action in advance. Moreover, the reasoning employed by the agency in support of a declaratory statement may offer useful guidance to others who are likely to interact with the agency in similar circumstances. Another party can expect the agency to apply the rationale for its declaratory statement consistently, or to explain why a different application is required.
Section 120.565(2), Florida Statutes (Supp.1996), requires the agency to give notice of the filing of each petition for declaratory statement in the Florida Administrative Law Weekly. This provision accounts for the possibility that a declaratory statement may, in a practical sense, affect the rights of other parties.1
Note 1: The notice provision in section 120.565, Florida Statutes, (1996) suggests that a declaratory statement, although not binding as precedent, has at least some "precedential significance." See Arthur J. England, Jr., L. Harold Levinson, and Johnny C. Burris, Florida Administrative Practice Manual, § 10.01(d) (Supp.1997).
Any substantially affected party can intervene in a declaratory statement proceeding before the agency, just as the Governor and Comptroller did in the present case.
These principles lead us to conclude that Commissioner Brogan had a right to seek a declaratory statement from the Division of Elections. He was a substantially affected party and the issue he presented was applicable to him in the particular circumstances of his case. The Division was authorized to reach the merits of the issue raised by the petition even though other statewide candidates might have also raised the same issue.
Chiles, 711 So.2d at 154-55 (emphasis added).

Professor Dore's Article
Judge Cope's dissent relied heavily upon Professor Dore's influential 1986 law review article,[4] which is apparently considered an authoritative source on Florida's administrative statutes. Indeed, it has been cited approvingly in at least nine Florida appellate opinions,[5] not including *382 Judge Cope's dissent below, as well as being cited in at least twelve law review articles.[6]
On this general issue, Professor Dore wrote that "[t]he purposes of the declaratory statement procedure are `to enable members of the public to definitively resolve ambiguities of law arising in the conduct of their daily affairs or in the planning of their future affairs' and `to enable the public to secure definitive binding advice as to the applicability of agency-enforced law to a particular set of facts.'" Dore, supra note 4, at 1052 (footnotes omitted). Professor Dore analogized the procedure to a declaratory judgment action, except that "the administrative substitute [was intended to] be more widely available than the judicial remedy and that its use not be unduly restricted by artificial access barriers that would frustrate its primary purposes." Id. at 1053. She elaborated that:
The procedure was developed to meet the perceived inadequacies of declaratory judgment actions. It was developed to provide a less costly, less lengthy, less complicated, and less technical nonjudicial mechanism for members of the public to secure "binding advice where it is necessary or helpful for them to conduct their affairs in accordance with law." For this executive branch alternative to work properly, great care must be exercised by both agencies and courts to understand it for what it is and not to treat it as a masquerading declaratory judgment action.
Id. Professor Dore also cautioned that "it is not proper for a reviewing court to reverse an agency's statement on nonsubstantive, technical grounds [because] [t]he technical niceties that constrain courts do not apply to executive agencies." Id. at 1062.

Statutory Interpretation Principles
In summarizing our methods of statutory construction, we have often recited:
[L]egislative intent controls construction of statutes in Florida. Moreover, "that intent is determined primarily from the language of the statute [and] ... [t]he plain meaning of the statutory language is the first consideration." St. Petersburg Bank and Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982) (citation omitted). This Court consistently has adhered to the plain meaning rule in applying statutory and constitutional provisions. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984); Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 882 (Fla.1983); Carson v. Miller, 370 So.2d 10, 11 (Fla. 1979); State ex rel. West v. Gray, 74 So.2d 114, 116 (Fla.1954); Wilson v. Crews, 160 Fla. 169, 175, 34 So.2d 114, 118 (1948); City of Jacksonville v. Continental Can Co., 113 Fla. 168, 171-73, 151 So. 488, 489-90 (1933); Van Pelt v. Hilliard, 75 Fla. 792, 798, 78 So. 693, 694 (1918). As we recently explained:
Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes. However, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." It has also been accurately stated that courts of this state are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so *383 would be an abrogation of legislative power."

Holly, 450 So.2d at 219 (citations omitted, emphasis added).
Public Health Trust of Dade County v. Lopez, 531 So.2d 946, 948-49 (Fla.1988) (footnote omitted). However, we have also stressed that we will not give a statute "a literal interpretation [that] would produce `an unreasonable or ridiculous conclusion.'" Perkins v. State, 682 So.2d 1083, 1085 (Fla.1996) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)).
In both respects, Judge Cope's dissent interprets the statute in a manner consistent with the principles of statutory construction in that it gives effect to the statute's plain language and does not lead to an absurd or ridiculous result, while at the same time recognizing the desirability of having an agency address a specific inquiry and then promulgate rules in anticipation of similar issues. Accord Chiles, 711 So.2d at 154-55. Indeed, it is sensible for courts to encourage agencies to be responsive to specific questions and then anticipate whether a broader application may occur in the future and take action accordingly.[7] Agency rules established in that manner are pre-empting later disputes rather than simply engaging in crisis management and reacting to endless inquiries each tailored to a petitioner's "particular set of circumstances." One approach should not and now does not absolutely foreclose the other. The agency response in this case appears directed to that end and is very practical in application. From a public policy perspective, problem-solving to serve the public should be encouraged.
Moreover, as Judge Cope points out, it is highly debatable whether the declaratory statement statute was ever limited to a singular consideration of the petitioner's unique situation only. Investment Corp., 714 So.2d at 594 n. 7 (Cope, J., dissenting) (arguing that language pertaining to petitioner's "`particular set of circumstances only' ... was intended to require simply that there be a live issue that affected the petitioner personally [rather than] `a purely hypothetical situation unrelated to [petitioner's] personal situation'") (quoting Dore, supra note 4, at 1048). Thus, even if true, the arguments of respondents and amicus curiae that the revised APA did not entail substantive changes would still not support their contention that a declaratory statement must be so narrowly tailored. Notwithstanding, the Legislature clearly had some purpose in mind when it deleted the word "only" from section 120.565(1). See generally Henderson v. State, 745 So.2d 319, 324 (Fla.1999); Beach v. Great Western Bank, 692 So.2d 146, 152 (Fla. 1997), aff'd sub nom. Beach v. Ocwen Fed. Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). Therefore, if the purpose was to "clarify" the statute, a reasonable reading is that the deletion was meant to dispel any confusion that only the most narrowly drawn declaratory statement having an absolutely unique application was permissible.
While Professor Dore's treatise provides revealing insight into the original purpose of the declaratory statement provision, on *384 the other hand, respondents correctly note that sections 120.52, 120.54, and 120.565 (Supp.1996) must be read in pari materia. Section 120.52 provides a starting point for the analysis, supplying statutory definitions of the terms of art used in chapter 120. Section 120.52(15) defines an administrative rule as "each agency statement of general applicability that implements, interprets, or prescribes law or policy...." For its part, section 120.54(1)(a) provides that "[r]ulemaking is not a matter of agency discretion. Each agency statement defined as a rule by s. 120.52 shall be adopted by the rulemaking procedure provided by this section as soon as feasible and practicable." As to section 120.565, that statute mandates that:
(1) Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances.
(2) The petition seeking a declaratory statement shall state with particularity the petitioner's set of circumstances and shall specify the statutory provision, rule, or order that the petitioner believes may apply to the set of circumstances.
(3) The agency shall give notice of the filing of each petition in the next available issue of the Florida Administrative Weekly and transmit copies of each petition to the committee. The agency shall issue a declaratory statement or deny the petition within 90 days after the filing of the petition. The declaratory statement or denial of the petition shall be noticed in the next available issue of the Florida Administrative Weekly. Agency disposition of petitions shall be final agency action.
The First District's caselaw is helpful here, in that the lesson drawn from its interpretation of various statutes of the revised APA in Consolidated-Tomoka Land and Chiles is that the Legislature will not micro-manage Florida's administrative agencies and that the public's interest is served in encouraging agency responsiveness in the performance of their functions. See Consolidated-Tomoka Land, 717 So.2d at 80 (interpreting sections 120.52(15) and 120.54(1)(a) as "suggest[ing] that rulemaking authority is not restricted to those situations in which the enabling statute details the precise subject of a proposed rule") (emphasis added); Chiles, 711 So.2d at 154-55 (explaining that declaratory statements may help parties avoid costly administrative litigation, while simultaneously providing "useful guidance to others who are likely to interact with the agency in similar circumstances"). The First District also interpreted the notice provision in the declaratory statement statute as "account[ing] for the possibility that a declaratory statement may, in a practical sense, affect the rights of other parties." Id. at 155. These specific conclusions are a straightforward interpretation of the statute. Moreover, as a general proposition, this construction is fully in accord with our caselaw, which has recognized that "modern society requires that administrative agencies receive some flexibility in how they may use their authority." B.H. v. State, 645 So.2d 987, 993 (Fla.1994); see also Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978).[8] Consequently, reading the statutes in concert supports *385 the First District's interpretation in Chiles.

This Case
In applying these various principles to this case, we arrive at the same conclusions enunciated in Judge Cope's dissent. In particular, we find that it elevates form over substance to assert that an agency cannot issue a declaratory statement dealing with a petitioner's "particular set of circumstances," while at the same time indicating that "a similar fact pattern may exist" in other circumstances and announcing its intention to "initiate rulemaking to establish an agency statement of general applicability."[9] It must be observed that under circumstances such as those presented in this case, involving such a unique industry having very limited participants engaged in almost identical operations, declaratory statements as to one would almost invariably be of interest to others in the very limited group. We are not aware of any rule of law that precludes an agency from simultaneously pursuing both courses of action. Further, such an approach to these issues does not appear to harm the rights of "[a]ny substantially affected person[ (s) ]." On the contrary, it performs a valuable public service in resolving the petition presented and then alerting others via the statute's notice provision as to the agency's position on the discrete issue involved. See Chiles, 711 So.2d at 154-55 (explaining that "the reasoning employed by the agency in support of the declaratory statement may offer useful guidance to others who are likely to interact with the agency in similar circumstances"). In short, the majority opinion below and respondents advocate a hypertechnical interpretation of section 120.565 which serves no logical end.[10]
We also find that the procedural safeguards inherent in a petition for declaratory statement are sufficient to protect the rights of any other concerned parties. Section 120.565(3) mandates that "[t]he agency shall give notice of the filing of each petition in the next available issue of the Florida Administrative Weekly...." Here, the Division complied with that mandatory requirement and ensured that proper notice was given. See 23 Fla. Admin. Weekly 3364 (July 3, 1997). As the First District explained, this notice provision "accounts for the possibility that a declaratory statement may, in a practical sense, affect the rights of other parties" and allows any substantially affected party to intervene in the declaratory statement proceeding before the agency. Chiles, 711 So.2d at 155.
In the final analysis, respondents' main concern is the substance of the declaratory statement rather than the threshold issue of whether the Division should have issued the statement which, as Judge Cope points out, the respondents had sought and received. Investment Corp., 714 So.2d at 592 (Cope, J., dissenting). For that reason, we agree with Judge Cope that this issue was not properly preserved for appellate review and should not have been considered on appeal. Id. If the respondents were of the view that the issue submitted for a declaratory statement could only be addressed by rulemaking, the procedure was reasonably open and available to accommodate the request under section 120.54(7), Florida *386 Statutes (Supp.1996). Further, respondents' merits argument is shaky ground on which to challenge the legitimacy of the Division's action, especially in light of the Third District's explicit decision not to address the substance of the declaratory statement.[11]Investment Corp., 714 So.2d at 591 n. 2.

CONCLUSION
In summary, we quash the decision under review, adopting Judge Cope's dissenting opinion as the correct view. We also approve the First District's decision in Chiles. We remand this case to the Third District for consideration of the merits of the Division's declaratory statement.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
NOTES
[1] "Breaks" are statutorily defined as "the portion of a pari-mutuel pool which is computed by rounding down to the nearest multiple of ten cents and is not distributed to the contributors or withheld by the permitholder as takeout." § 550.002(1), Fla. Stat. (Supp. 1996). "Takeout" is "the percentage of the pari-mutuel pools deducted by the permitholder prior to the distribution of the pool." § 550.002(34), Fla. Stat. (Supp.1996).
[2] The statute provides, in pertinent part:

(1) Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances.
. . . .
(3) The agency shall give notice of the filing of each petition in the next available issue of the Florida Administrative Weekly.... The agency shall issue a declaratory statement or deny the petition within 90 days after the filing of the petition. The declaratory statement or denial of the petition shall be noticed in the next available issue of the Florida Administrative Weekly. Agency disposition of petitions shall be final agency action.
§ 120.565, Fla. Stat. (Supp.1996).
[3] A timely and thorough overview of the revised APA rulemaking standard may be found in Martha C. Mann, Note, St. Johns River Water Management District v. Consolidated Tomoka Land Co.: Defining Agency Rulemaking Authority Under the 1996 Revisions to the Florida Administrative Procedure Act, 26 Fla. St. U.L.Rev. 517 (1999).
[4] Patricia A. Dore, Access to Florida Administrative Proceedings, 13 Fla. St. U.L.Rev. 965 (1986).
[5] See Sickon v. School Bd. of Alachua County, 719 So.2d 360 (Fla. 1st DCA 1998); Kruer v. Board of Trustees of Internal Imp. Trust Fund, 647 So.2d 129 (Fla. 1st DCA 1994); Department of Professional Regulation v. Florida Dental Hygienist Ass'n, 612 So.2d 646 (Fla. 1st DCA 1993); Braman Cadillac, Inc. v. Department of Highway Safety & Motor Vehicles, 584 So.2d 1047 (Fla. 1st DCA 1991); Department of Health & Rehab. Servs. v. Florida Medical Center, 578 So.2d 351 (Fla. 1st DCA 1991); Phibro Resources Corp. v. State Dept. of Envir. Reg., 579 So.2d 118 (Fla. 1st DCA 1991); International Jai-Alai Players Ass'n v. Florida Pari-Mutuel Comm'n, 561 So.2d 1224 (Fla. 3d DCA 1990); Florida Soc. of Ophthalmology v. State Bd. of Optometry, 532 So.2d 1279 (Fla. 1st DCA 1988); Suntide Condominium Ass'n, Inc. v. Division of Florida Land Sales, Condominiums & Mobile Homes, 504 So.2d 1343 (Fla. 1st DCA 1987).
[6] See, e.g., Stephen T. Maher, How the Glitch Stole Christmas: The 1997 Amendments to the Florida Administrative Procedure Act, 25 Fla. St. U.L.Rev. 235 (1998); James P. Rhea & Patrick L. "Booter" Imhof, An Overview of the 1996 Administrative Procedure Act, 48 Fla. L.Rev. 1 (1996).
[7] Although not directly implicated in this case, the addition of section 120.542 has other commentators lauding the inherent flexibility of the revised scheme:

The new variance and waiver provision [section 120.542] may be the most significant element of the comprehensive revision of Florida's APA. It is unique in that it requires all agencies subject to the APA to grant variances and waivers when petitioners can satisfy the detailed criteria of the statute and the uniform rules implementing the statute. The provision is intended to give agencies much-needed flexibility to address unique or unusual situations that are not contemplated by agency rules that, by necessity, are written to address general circumstances. The Florida provision likely will be monitored by other states as a possible means of bring the much-heralded and elusive "common sense" into government decision-making.
Donna E. Blanton & Robert M. Rhodes, Flexibility, Flexibility, Flexibility: The New Variance and Waiver Provision, Fla. B.J., Mar. 1997 at 35, 38-39.
[8] Moreover, the Legislature, by deed if not word, apparently agrees with this regulatory philosophy. Indeed, in the land use regulation context, one author notes that:

Despite the presence of the new rulemaking standard and the statement of the Legislature that there should be consideration in staff analyses as to whether there would be enough guidance for agencies in proposed legislation, the Legislature continues to enact legislation granting broad powers to a variety of agencies. "[S]pecific legislative direction," agrees administrative law professor Jim Rossi, "just doesn't happen."
Mann, supra note 3, at 536 (footnotes omitted).
[9] To be sure, this case presents something of a twist as the very "members of the public" that petitioned for the declaratory statement are the ones that sought its reversal on "nonsubstantive, technical grounds." However, that seeming role reversal does not lessen the importance of the legal principle involved.
[10] In recently rejecting a similarly tortured statutory construction, the Fourth District sagely advised:

Laws should be enforced with common sense and applied without losing sight of the legislative purpose behind their enactment. To do otherwise is to generate disrespect for the law by creating a morass of technical regulations with no connection to human experience.
Mackey v. Household Bank, F.S.B., 677 So.2d 1295, 1298 (Fla. 4th DCA 1996).
[11] At oral argument, the attorney for respondents Calder, Tropical, and Gulfstream represented to this Court that the Division refused his clients' request for a rule on this issue and indicated that they must petition for a declaratory statement instead. Respondents' attorney acknowledged that no record exists of this alleged exchange between the parties. However, assuming that this event took place, we see no legitimate public purpose served in agencies forcing concerned citizens into seeking declaratory statements rather than petitioning for rulemaking. Chapter 120 prescribes procedures for pursuing both courses of action; no provision in that statutory scheme invests state agencies with the authority to dictate which procedure a petitioner must pursue. If true, we strongly disapprove of any such extralegal coercion by agencies whose ultimate purpose is to serve the citizens of the State of Florida.