ON MOTION FOR CLARIFICATION
WOLF, J.
On consideration of the Motion for Clarification filed by appellee, we withdraw the previous opinion and substitute the following.
ExxonMobil petitioned the Department of Agriculture (the Department) for a declaratory statement pursuant to section 120.565, Florida Statutes (2009), seeking *757 clarification of Florida’s Price Gouging Law (embodied in section 501.160, Florida Statutes (2009)). The Department dismissed the Petition and ExxonMobil seeks review of this dismissal order. Because we find the grounds raised by the Department did not prohibit the Department from responding to the Petition as to two, discrete questions, we reverse.
Section 501.160, Florida Statutes (1992), was passed to prevent “dramatic increases in the prices of certain essential commodities” during “certain periods of disaster.” The Law prohibits unconscionable price increases, which it defines as a “gross disparity” between the average cost of the commodity 30 days prior to a declared state of emergency and the current price of the commodity. However, the Law exempts price increases attributable to “additional costs ... or national or international market trends.” § 501.60(l)(b), Fla. Stat. (2009).
While it is somewhat difficult to extrapolate concrete questions from the 26-page Petition, the essence of the Petition focuses on two major concerns. First, Exxon-Mobil draws attention to the fact that it and 15 other major wholesale gasoline distributors use the Gulf Coast Regional Platts Index as the pricing indicator for purchase and sale contracts of gasoline. Because this Index is regional in nature, ExxonMobil is concerned the Index may not be considered an increased “national or international market trend” as that term is used in the Price Gouging Law. § 501.160(l)(b), Fla. Stat. Second, Exxon-Mobil states in the past, the Price Gouging Law has only been applied to branded retail gasoline and asks for clarification as to whether the Price Gouging Law may be enforced against wholesale gasoline corporations specializing in the sale of gasoline from one commercial entity to another.
In Florida Department of Business & Professional Regulation, Division of Pari-Mutuel Wagering v. Investment Corp. of Palm Beach, 747 So.2d 374 (Fla.1999), the supreme court broadened the previously narrow interpretation of section 120.565, Florida Statutes concerning when declaratory statements were available. In doing so, the court noted the purpose of the declaratory statement was “ ‘to enable members of the public to definitively resolve ambiguities of law arising in the conduct of their daily affairs or in the planning of their future affairs’ and ‘to enable the public to secure definitive binding advice as to the applicability of agency-enforced law to a particular set of facts.’ ” Id. at 382 (quoting Patricia A. Dore, Access to Florida Administrative Proceedings, 13 Fla. St. U. L. Rev. 965 (1986)). Further, in broadening the statute’s application, the court explained:
It must be observed that under circumstances such as those presented in this case, involving such a unique industry having very limited participants engaged in almost identical operations, declaratory statements as to one would almost invariably be of interest to others in the very limited group.
Id. at 385. The court warned against declining to provide declaratory statements in these situations, noting this “hypertech-nical interpretation of section 120.565” would serve “no logical end.” Id. at 385.
Here, ExxonMobil is a member of the public seeking to clarify whether its past and present use of the Gulf Coast Regional Platts Index protects it from a state action alleging a violation of the Price Gouging Law. The Department points out that the answer to this question could affect 15 other similarly situated businesses using the same Index. However, as noted above, the supreme court has previously concluded declaratory statements are ap *758 propriate where a petition is filed by an individual corporation alleging a “particular set of circumstances” involving “a unique industry having very limited participants engaged in almost identical operations.” Inv. Corp., 747 So.2d at 385.
Thus, an agency may not decline to respond to a petition for a declaratory statement simply because “declaratory statements as to one would almost invariably be of interest to others in the very limited group.” Id. In fact, as noted in Investment Corp., “it is highly debatable whether the declaratory statement statute was ever limited to a singular consideration of the petitioner’s unique situation only.” Id. at 383 (citing Inv. Corp. of Palm Beach v. Div. of Pari-Mutuel Wagering, Dep’t of Bus. & Prof'l Regulation, 714 So.2d 589, 594 n. 7 (Fla. 3d DCA 1998) (Cope, J., dissenting).[1]
Further, refusing to answer the question serves no logical end and thwarts the purpose behind section 120.565 by foreclosing ExxonMobil from securing “definitive binding advice as to the applicability of agency-enforced law to a particular set of facts.” Inv. Corp., 747 So.2d at 382 (citations omitted).
The Department also argues that because it issued investigative subpoenas prior to ExxonMobil’s filing of the Petition, it was prohibited from responding. It is true Florida courts, including this one, have generally held that an administrative agency must decline to provide a declaratory statement when the statement would address issues currently pending in a judicial proceeding. See Padilla v. Liberty Mut. Ins. Co., 832 So.2d 916, 919 (Fla. 1st DCA 2002); Novick v. Dep’t of Health, Bd. of Med., 816 So.2d 1237, 1240 (Fla. 5th DCA 2002); Suntide Condo. Ass’n v. Div. of Fla. Land Sales, 504 So.2d 1343, 1345 (Fla. 1st DCA 1987); Couch v. State, 377 So.2d 32, 33 (Fla. 1st DCA 1979). However, we find this line of cases is inapplicable to the underlying situation. Service of investigatory subpoenas allows agencies to collect information prior to deciding if an enforcement action is necessary; the issuance of these subpoenas does not necessarily result in litigation. Accepting the Department’s position would allow agencies to avoid responding to requests for declaratory statements for lengthy time periods even where litigation was not imminent. Accordingly, we reject the Department’s reliance on this ground for dismissal of the underlying Petition.[2]
*759 For the foregoing reasons, we reverse and remand with directions to the Department to respond to the questions of (1) whether Florida’s Price Gouging Law applies to commercial wholesale gasoline transactions such as those engaged in by-ExxonMobil, and (2) whether ExxonMo-bil’s use of the Gulf Coast Regional Platts Index protects it from an enforcement action under the Price Gouging Law.
ROBERTS and WETHERELL, JJ., concur.

. We recognize Investment Corp. considered a declaratory statement which simultaneously responded to a petition while announcing its intention to initiate rulemaking. We are likewise cognizant of this court’s holding in Lennar Homes, Inc. v. Department of Business & Professional Regulation, 888 So.2d 50 (Fla. 1st DCA 2004), which recognized the broader interpretation of section 120.565 but found a declaratory statement may not go so far as to announce “broad agency policy” which is akin to a rule. Our case is further complicated because both parties acknowledge the Department lacks statutory authority to adopt rules construing the statute in question. Thus, the Department cannot simultaneously issue a declaratory statement and initiate rulemaking.
However, absent a response to the Petition before us which specifically addresses the discrete questions identified herein, it is impossible for this court to engage in an analysis of whether the Department’s response would necessarily invade the scope of rulemaking. Nor did the Department specifically rely on its lack of rulemaking authority as the basis for the dismissal of the declaratory statement. Thus, any ruling on our part as to the issue would be premature.

. While the Department argues to this court that there is litigation pending at the present time which would preclude issuance of the declaratory statement, the Department did not rely on pending litigation in its dismissal. Thus, we decline to prematurely address how this issue should be treated on remand.